**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **MOSHE SHARGIAN** | **CIVIL ACTION NO.** <br> **21 CV 02282 MVL -DPC** |
| **VERSUS** | |
| **YOEL SHARGIAN,** <br> **JOSEPH STEBBINS,** <br> **CCNO DEVELOPMENT,** <br> **LLC, EL AD GROUP d/b/a** <br> **EL AD US HOLDING, INC.,** <br> **a/d/b/a EL-AD GROUP LOUISIANA** <br> **(2016)LLC I and II;** <br> **CHR PARTNERS, LLC,** <br> **1532 TULANE PARTNERS, INC.,** <br> **1532 TULANE HOLDCO, LLC,** <br> **TULANE INVESTORS, LLC** <br> **AND XYZ INSURANCE COMPANY** | **JUDGE MARY VIAL LEMMON** <br><br> **MAGISTRATE JUDGE** <br><br> **DONNA PHILLIPS CURRAULT** |

**FIRST AMENDING AND SUPPLEMENTING COMPLAINT FOR DAMAGES (AND IN THE ALTERNATIVE, PETITION FOR DECLARATORY RELIEF UNDER THE LOUISIANA DECLARATORY JUDGMENT ACT AND LOUISIANA CODE CIVIL PROCEDURE ARTICLES 1871 ET.SEQ.)**

NOW INTO COURT COMES Plaintiff MOSHE SHARGIAN (hereinafter, Plaintiff) in the Original Petition filed in Civil District Court for the Parish of Orleans, State of Louisiana on November 12, 2021 (removed to this Court on December 10, 2021 and submits the following First Amending and Supplementing Petition/ Complaint and in the Alternative Petition For Declarative Relief stating as follows:

All allegations of the original Complaint, have been restated and incorporated herein, and this First Amending and Supplementing Complaint shall therefore begin with the paragraph number 1. The Caption of the Original Petition has been changed to include the names of all Defendants including those added herein.

1.

## PARTIES

## PARTY DEFENDANTS

Made defendants herein are:

1) **YOEL SHARGIAN**, a person of the full age of majority, a resident of and domiciled in the State of New Jersey;

2) **JOSEPH STEBBINS**, a person of the full age of majority, upon information and belief, a resident of and domiciled in the Parish of Orleans whose office is located 4127 South Claiborne Ave, New Orleans, La. 70125;

3) **CCNO DEVELOPMENT, LLC ("CCNO)** , a limited liability company formed under the laws of the State of Louisiana which is domiciled in New Orleans, Louisiana and active under Louisiana law with its principal place of business located at 4127 S. Claiborne Ave., NOLA 70125 AND, whose registered agent for service of process is **JOSEPH STEBBINS** and on information and belief Mr. Stebbins is the sole member and is manager of CCNO.

4) **CHR PARTNERS, LLC**, ("CHR") a limited liability company formed under the laws of the State of Louisiana which according to the Louisiana Secretary of State is not in good standing for failure to file an annual report but which is domiciled in New Orleans, Louisiana with its principal place of business located at 4127 S. Claiborne Ave., NOLA 70125 AND, whose registered agent for service of process is **JOSEPH STEBBINS** and on information and belief Defendant Joel Shargian is the CEO or President, and has management control through his position in member, El Ad Group, LLC, together with member CCNO.

5) **ELAD GROUP d/b/a EL Ad US Holdings, Inc. a/d/b/a EL-AD GROUP LOUISIANA (2016)LLC I and II** on information and belief a company, in the business of real estate development and ownership, formed under the laws of the State of Israel with its principal place of business on information and belief in New York and, whose registered agent for service of process is C.T. Corporation, Corporation Trust Center,1209 Orange Street, Wilmington Delaware, 19801 (EIAD Group) and National Registered Agents, at the same address which company operates in many states including the state of Louisiana, and meets the requirements of "minimum contacts" by virtue of its business activities, including but not limited to its actions to obtain the bid

from the State of Louisiana for the purchase of Charity Hospital and thereafter, engaged in actions to obtain a lease of Charity Hospital and other buildings in the same square for purposes of developing the Charity Hospital project which is at issue herein.

7) **1532 TULANE PARTNERS, INC.**, a Louisiana corporation which is domiciled in New Orleans, Louisiana with its principal place of business located at 4127 S. Claiborne Ave., NOLA 70125 AND, whose registered agent for service of process is **JOSEPH STEBBINS** and whose CEO/President is **Yoel Shargian**;

8) **1532 TULANE HOLDCO, LLC,** a Louisiana limited liability company which is domiciled in New Orleans, Louisiana with its principal place of business located 4127 S. Claiborne Ave., NOLA 70125 AND, whose registered agent for service of process is **JOSEPH STEBBINS** and whose CEO/President is **Yoel Shargian**;

9) **1532 TULANE INVESTORS, LLC,** a Louisiana limited liability company which is domiciled in New Orleans, Louisiana with its principal place of business located 4127 S. Claiborne Ave., NOLA 70125 AND, whose registered agent for service of process is **JOSEPH STEBBINS** and whose CEO/President is **Yoel Shargian**;

10) Also made Defendant herein under the Louisiana Direct Action statute is "**XYZ Insurance Company,**" a pseudonym for the actual liability insurer for each Defendant or the Defendants globally and which issued a policy of liability insurance to them individually or jointly which is in effect and applicable to the claims herein. Upon discovery of the actual insurer, the insurer's actual name will be substituted for the pseudonym.

All Defendants are sued jointly, severally and *in solido*.

**PARTY PLAINTIFF**

2.

Made Plaintiff herein is **MOSHE SHARGIAN,** a resident of and domiciled in the State of Louisiana, who respectfully represents:

**JURISDICTION**

3.

Defendant, Yoel Shargian filed "pleadings" within his Notice of Removal which was filed on December 10, 2021 which may be considered by this Court as "responsive." Jurisdiction is thus proper in this Court for purposes of filing this timely amendment as of right and "a matter of course" pursuant to FRCP 15(a), and the requirements of compulsory joinder, FRCP 19 or alternatively/ under the requirements of permissive joinder as set forth in FRCP 20.

However, remand to the state of Louisiana state courts will be required by this Honorable Court thereafter, as there is not complete diversity among the Defendants. In consideration of 28 U.S.C. §1447(e) as the Plaintiff "...*seeks to join* additional defendants whose joinder would destroy subject matter jurisdiction". See, e.g., *Taylor v. GGNSC Philadelphia, LP*, No. 14-cv-7100, 2015 WL 5584781, at *4(E.D. Pa. Sept. 23, 2015) and *Donawa v. Hess Corp,* No. 2020-0090 (D.V.I. May 25, 2021, 2021 WL 2143329.

4.

Venue is proper in the United States District Court for the Eastern District of Louisiana as the original petition, prior to removal was properly filed in Orleans Parish, and was removed to this Court. Further, the action is on a breach of agreement which emanated from wrongful acts taken in Orleans Parish and which resulted in damages to the Plaintiffs based on Louisiana Civil Code Art. 2315, general negligence, breach of delictual duty, the equitable doctrine of unjust enrichment, breach of civil contract, all of which entitle him to pecuniary and other monetary damages, including but not limited to

compensatory damages as allowed under Louisiana law, as well as declaratory and injunctive relief. Furthermore, the statements made upon which Plaintiff relied, and which form the basis for Plaintiff's reliance occurred in Orleans Parish. See, LA. C.C.P. art 74.4, and art. 76.I.

**CHARITY HOSPITAL**

5.

Charity Hospital was built at its current location at 1532 Tulane Avenue in New Orleans in 1939. Prior to Hurricane Katrina, it was a vibrant, public teaching hospital.

6.

Charity Hospital was severely damaged in Hurricane Katrina and did not re-open.

7.

In 2007, University Hospital, managed by Louisiana State University (LSU) administered the remaining indigent care originally provided at Charity.

8.

During the aftermath of Hurricane Katrina, and while Charity Hospital's functions were performed at University Hospital, LSU and the State of Louisiana advocated for hundreds of millions of dollars from the Federal Emergency Management Agency (FEMA) as the replacement value, as opposed to refurbishment value, of the Charity Hospital complex, and ultimately received an award of funds from FEMA for demolition of the Charity Hospital complex.

9.

The State of Louisiana essentially argued to FEMA that Charity Hospital was too damaged to reopen and should be considered a total loss, therefore justifying an award of funds to demolish Charity Hospital.

10.

The State ultimately prevailed, and FEMA awarded the State sufficient funds to begin its work on the new University Medical Center, a state-of-the-art medical center which has now replaced Charity Hospital as the primary care facility for the indigent in the New Orleans area. In 2015, University Medical Center New Orleans on Canal Street opened, consolidating the functions of both the old Charity Hospital and University Hospital.

11.

Upon information and belief, the Charity Hospital physical plant was transferred to LSU Medical Center (LSUMC) and resulted in a cost or burden to LSUMC of $1 million per year to maintain and secure the property.

12.

A public debate began in the New Orleans area regarding what would happen with the remaining bulk of Charity Hospital. Preservationists, developers, and ordinary citizens passionately argued that the property either needed to be developed to serve some public purpose or be razed.

13.

In 2015, under Gov. Bobby Jindal, the State of Louisiana, Division of Administration, issued a public Request for Information which invited developers to

propose redevelopment of the Charity Hospital site for use in commerce. (hereinafter, the Project).

14.

Plaintiff, a real estate developer, followed the history of the development of Charity Hospital after Hurricane Katrina, as it is set forth above.

**THE CONTRACT AND WORK PERFORMED BY PLAINTIFF**

15.

Plaintiff had worked with Defendant, Joseph Stebbins, on previous development projects. Defendant, Joseph Stebbins, individually and/or as owner of Defendant, CCNO Development, Inc. (hereinafter "CCNO") expressed his interest in the Charity Hospital Project, but, on information and belief, neither he nor CCNO had the financial ability or the financial contacts to develop the Project. Defendant Stebbins individually and/or as owner of Defendant CCNO approached Plaintiff to obtain financing of the development of the Charity Hospital, i.e., the Project. Defendants, Stebbins and/or CCNO, requested Plaintiff to obtain financing for the Charity Hospital Project from Defendant Yoel Shargian, Plaintiff's first cousin and CEO or President of Defendant EL AD Group or Defendant EL AD US HOLDING, INC. Neither Defendant, Stebbins, nor Defendant, CCNO, had the ability to go forward with the Project without Plaintiff arranging funding for the Project. Defendant, Yoel Shargian did not have the ability to go forward with the Project for the Development of Charity Hospital as he did not have the contacts which Stebbins had in the State of Louisiana nor did he know Stebbins until he was introduced by Plaintiff. Defendants, Stebbins and/or CCNO and Defendants Yoel Shargian and/or El Ad through membership in 1532 Tulane Partners, Inc. have

benefitted from the efforts of Plaintiff who is solely responsible for obtaining financing for the Charity Project. Plaintiff further avers, on information and belief, that Defendants, Stebbins and CCNO, are some of the owners of Defendant, 1532 Tulane Partners, Inc. (and/or Defendant, 1532 Tulane Holdco, LLC, and/or Defendant,1532 Tulane Investors, LLC, cumulatively referred to hereinafter as "Tulane Partners") which hold(s) a long term lease of the buildings of the Charity Project.

16.

At the request of Defendants Stebbins and/or CCNO, on or about January 5, 2015, Plaintiff contacted his cousin, Defendant, Yoel Shargian, to determine if he was interested in providing the necessary financing for the bid process (i.e., development of the Proposal), as well as for the re-development of Charity Hospital if ultimately successful in being awarded the Project.

17.

After Plaintiff explained the benefit of this Project, Defendant, Yoel Shargian, informed Plaintiff that he wished to pursue the financing for the Proposal and the entire development of the Project. Defendant, Yoel Shargian, requested the assistance of Plaintiff to facilitate the financing of the Project and to act as Defendant Yoel Shargian's, local representative for the Project. Defendant, Yoel Shargian, also requested that Plaintiff work on the Proposal and thereafter, if successful, assist in obtaining financing for the development of the Project on Defendant, Yoel Shargian's, behalf, which Plaintiff did for the next two years with the agreement that Plaintiff would be compensated for his efforts relative to the Charity Hospital Project. Moshe Shargian and Yoel Shargian are first cousins. They had invested together in real estate projects prior to the Charity

Hospital Project. In those investments, there was no written agreement as to the manner in which profits would be shared. Moshe Shargian relied on his cousin's representations and agreement to include him in the profits to be derived from the Charity Hospital Project, namely that if the project was successful, the profits would be shared with Moshe Shargian. Plaintiff assumed that his cousin, Yoel Shargian, would utilize his contacts to provide financing for the Charity Hospital Project. Plaintiff was aware that Defendant Yoel Shargian would contact the owner of EL AD to seek financing but that other sources might be sought as well. In fact, other sources were contacted but El Ad was the primary financial source for the bid process for the Charity Hospital Project where the bid involved the purchase of the buildings which comprised Charity Hospital and its adjoining buildings. However, as events transpired and as set forth further below, Yoel Shargian abandoned the Project after the first bid was granted, when the State cancelled the bid as it no longer wanted to sell but to lease the Charity Hospital Project.

18.

Plaintiff had meetings on an almost daily basis in New Orleans with Defendant, Joseph Stebbins and/or Defendant, CCNO and CCNO's employees and/or consultants involved in researching and producing a Proposal for the Charity Hospital Project. Plaintiff was primarily involved in assisting with the financial aspect of the Charity Hospital Project including soliciting potential investors, including one of which ultimately financed the proposal and the renovation cost of the Charity Hospital Project.

19.

Plaintiff, Defendants, Stebbins and CCNO, produced a draft of the Charity Hospital Proposal and submitted the draft to Defendant, Yoel Shargian for his review. Over a period of many months, Defendants, Stebbins, CCNO, and Yoel Shargian, and Plaintiff, revised and modified the draft Proposal.

20.

Plaintiff arranged and personally paid for travel to New York for Plaintiff, Defendant, Stebbins and various employees or consultants of CCNO, to meet with Defendant, Yoel Shargian, in June 2015.

21.

Plaintiff supervised the development of the Proposal on behalf of Defendants Stebbins, CCNO and Yoel Shargian, by meeting with Defendants Stebbins and/or CCNO, and communicating frequently with Defendant, Yoel Shargian, Stebbins, and CCNO and its employees and consultants via email, through telephone calls, and by attending numerous meetings held in New Orleans and New York.

22.

Plaintiff avers that Defendant, Yoel Shargian, insisted that the Proposal for the Charity Hospital Project be submitted on behalf of a limited liability company organized in the State of Louisiana, namely, Defendant, CHR Partners, LLC (hereinafter "CHR"), an entity owned by two other Louisiana limited liability companies but ultimately owned by CCNO and El Ad.

23.

Plaintiff avers that the creation of CHR, owned by two other Louisiana entities, was to mask the true ownership of CHR, which was Defendants, Stebbins and/or CCNO on the one hand, and Defendants, Yoel Shargian, individually and/or as CEO/shareholder of Defendant, El Ad Group, or its holding company, Defendant, El Ad US Holding, Inc. (hereinafter cumulatively referred to as "El Ad")

24.

In reliance upon the representations and actions of all of the above-named Defendants, Plaintiff spent the next two years working with the Defendants on the Proposal on behalf of Defendants directed toward obtaining the Charity Hospital Project, including, but not limited to, meeting with and guiding Isaac Tshuva the owner of EL AD through a tour of the Charity Project buildings and encouraging him to financially support the Project through El Ad which on information and belief, he ultimately did.

25.

In 2015, Defendant CHR (was one of four finalists for the redevelopment of Charity Hospital) CHR's Proposal offered $30 million to the State of Louisiana to purchase and redevelop the building.

26.

Plaintiff participated in meetings with the above-named Defendants in regard with FEMA-related questions, specifically, the impact that a sale or lease of Charity Hospital could cause for the State of Louisiana/LSUMC in relation to obligations to FEMA.

27.

Plaintiff worked with above-named Defendants to complete the Proposal, which was ultimately awarded to Defendant, CHR, in January 2016 to purchase the Charity Hospital Project.

28.

Plaintiff further avers that subsequent to the election of Governor Edwards, the previous award to Defendant, CHR, was thrown out and the bid process re-opened by a Request For Proposal based upon a lease of the Charity Hospital Project in order to avoid the State of Louisiana paying substantial sums to FEMA.

29.

On information and belief, after the first bid was discarded, Defendants Stebbins and Yoel Shargian had very little, if any, communication with each other. Defendants Stebbins and/or CCNO had no source of funds for the next proposal where a lease of the Charity Hospital Buildings was sought. Defendant STEBBINS either in his individual capacity or on behalf of Defendant CCNO, thereafter specifically requested that Plaintiff obtain funding from Defendant, El Ad and/or its primary shareholder, Isaac Tshuva, for the second bid process for the Charity Hospital Project. Defendant, Stebbins, specifically requested that Plaintiff travel to Israel to meet with Isaac Tshuva, the owner of Defendant, El Ad, to promote the project and convince Isaac Tshuva to provide financing for a second bid process through EL AD in which effort Plaintiff was successful . Plaintiff continued to perform services toward procuring the Charity Hospital Project financing for the second bid which ultimately secured the project for the named Defendants, and in particular, for the principal, CHR now operating as Tulane Partners as the successor, assign or affiliate of CHR up to and including the date of the

confection of the final agreement between LSU Foundation and Tulane Partners. During his trip to Israel to meet with Isaac Tshuva, he presented a plan for the Charity Hospital Project which convinced Tshuva that he should provide financing through El Ad in the Charity Hospital Project where a long-term lease was being sought. As a result of convincing Tshuva through El Ad to invest in the Project, Tshuva convinced Defendant Yoel Shargian to become re-involved in the Project and communicate/cooperate with Defendant Stebbins and/or Defendant CCNO to produce a second proposal for the Charity Hospital Project. Based upon information and belief, the above-named Defendants developed a Proposal to lease the Charity Hospital Project (hereinafter Lease Proposal) based on the information and efforts utilized in developing the initial Proposal to purchase the Project. As a result of the efforts of Plaintiff, Defendants El Ad and/or Yoel Shargian, either individually and/or in concert through El Ad, agreed to provide the financing for the second bid which ultimately led to the award of the Charity Hospital Project to a successor of Defendant, CHR, namely, Defendant, 1532 Tulane Partners, Inc. (hereinafter "Tulane Partners"). Tulane Partners' officers are Yoel Shargian and Joseph Stebbins. Defendant, Tulane Partners' website states that it was created for the purpose of redeveloping the former Charity Hospital Building. On information and belief, Defendant, Tulane Partners and its related entities obtained the lease for the Charity Project. On information and belief, CCNO is tasked with the physical renovation of the Charity Hospital Project and El Ad has and continues to provide financing for the project. The initial amount provided by El AD was on information and belief $11.85 million dollars with annual rental payments of $39 million over the term of the lease. Further on information and belief Tulane Partners has

received $94,000,000 in tax credits which may have been sold resulting in profits to Tulane Partners and the owners/members thereof. The original bid package produced by Defendant CHR to purchase the buildings was over 600 pages. That package was, on information and belief, fully utilized by Defendant Tulane Partners in the second bid process with modifications changing the second bid to a lease of the buildings instead of the purchase of the Charity Hospital Project buildings.

30.

Plaintiff labored for years without compensation on behalf of all of the above-named Defendants to obtain financing - anticipating compensation at the time of profits being available for distribution. Plaintiff further avers that without his efforts from the time that Defendant Stebbins and/or CCNO initially sought his efforts to obtain financing to the occasion when Defendant Stebbins specifically sought Plaintiff's efforts to obtain financing during the second bid process by going to Israel to convince Isaac Tshuva to have El Ad become the financial partner, the above-named Defendants would not have obtained the award in either the first or the second bid process. Plaintiff, Moshe Shargian, maintains that without his efforts in obtaining financing, none of the Defendants would have been successful in obtaining the Charity Hospital Project.

31.

Plaintiff further avers that Defendants submitted the Lease Proposal to the State of Louisiana under 1532 TULANE PARTNERS, INC. which was merely a successor, assign, or affiliate of CHR PARTNERS, LLC, up to and including, the date of the confection of the final agreement in 2019.

32.

Plaintiff further avers that none of the above-named Defendants, including, but not limited to, Defendant, Yoel Shargian, who is currently President of Defendant, TULANE PARTNERS, ever informed Plaintiff that his efforts from 2015 to the acceptance of the Lease Proposal in 2019 would be uncompensated. In fact, Defendant Stebbins has previously stated that Plaintiff should be compensated.

33.

In January of 2019, Defendant, CHR PARTNERS, LLC, now operating as Defendant, 1532 TULANE PARTNERS, as the successor, assign, or affiliate of Defendant, CHR, was selected as the preferred developer and entered into a predevelopment agreement with LSU for the Charity Hospital Project.

34.

Plaintiff further avers that in October of 2019, LSU and Defendant, 1532 TULANE PARTNERS, signed a final agreement to take possession of the Charity Hospital Project. Plaintiff further avers that all of the above-named Defendants, are now operating through Defendant, 1532 TULANE PARTNERS, which is the successor, assign, or affiliate of Defendant, CHR.

**CLAIMS/CAUSES OF ACTION**

**DETRIMENTAL RELIANCE**

35.

All of the above-named Defendants have failed and/or refused to compensate Plaintiff in spite of the successful efforts made by Plaintiff without which efforts this Project would not have been awarded to such Defendants. Although Plaintiff initially believed that his agreement was solely with Yoel Shargian and that is the reason that

he was the only defendant in the original petition, consideration of the pertinent facts demonstrates that a cause of action against Stebbins individually and/or with CCNO and others also was created by virtue of the specific request on the part of Joseph Stebbins individually or through CCNO to Plaintiff that he seek financing by going to Israel to meet with the owner of EL AD when Stebbins was no longer speaking to Yoel Shargian constitutes an agency or brokerage arrangement for which PLAINTIFF should be compensated.

**BREACH OF CONTRACT**

36.

> "Louisiana Civil Code Art. 1906. Definition of contract
>
> A contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished."

Plaintiff entered into an agreement with the Defendants to use his efforts, skills, contacts, experience, and knowledge to secure financing on their behalf for the purposes of successfully obtaining a contract with the owners/controllers of Charity Hospital, and any related buildings or assets, for the purpose of developing the Charity Hospital project detailed in paragraphs above. The agreement created obligations on the part of both Plaintiff and the Defendants. The Louisiana Defendants induced Plaintiff to use his skills and contacts in Israel to secure the financing that they could not secure. The consideration for all of the Defendants was that they were, by virtue of Plaintiff's efforts, introduced to each other, and to the plan that Plaintiff participated in preparing, as well as receiving the benefits of Plaintiff's knowledge and contacts within Louisiana. The consideration for Plaintiff's efforts was that he would share in the profits

from their development of Charity Hospital project and or any benefits generated to the Defendants including tax credits. But for Plaintiff's efforts the parties would not have been able to do the Charity hospital development project. Defendant Stebbins had no money and no contacts to get financing and no credit. The other Defendants had money but no contacts in Louisiana. But for Plaintiff neither side would have met each other, nor had the opportunity to form a partnership for the successful obtaining of the lease or the development of the project.

37.

Plaintiff met his obligations under the agreement. Defendants breached the agreement. Defendants failed to honor the contract between the parties, and failed to provide the consideration that was the object of the contract.

38.

Plaintiff is entitled to be compensated with compensatory damages for the significant and substantial work performed by Plaintiff all of which actions by Plaintiff ensured the viability and success of the Proposal for the redevelopment of the Charity Hospital Project, even though Defendants are well aware of Plaintiff's efforts and contributions in regard to the successful award of the Charity Hospital Project to Defendant Tulane Partners.

39.

**UNJUST ENRICHMENT**

Plaintiff additionally claims that the Defendants created, owned, and/or managed 1532 TULANE PARTNERS, INC, 1532 TULANE HOLDCO, LLC, and 1532 TULANE INVESTORS, LLC which were created to deprive Plaintiff from the terms of Defendants'

agreement or unjustly enriched Defendants at the expense of Plaintiff and thus, should be ordered to compensate Plaintiff. Plaintiff further avers that the aforementioned "Tulane Partners" entities constitute successors, assigns, and/or affiliates of CHR and which Tulane Partners continued to elicit the services of Plaintiff in order to achieve the award of Charity Hospital Project pursuant to the Lease Agreement ultimate reached by said entities, and are therefore bound by the oral agreements by CHR, Joseph Stebbins, Yoel Shargian, and CCNO Development, Inc. relative to the first bid and by Tulane Partners during the course of the second bid as a successor entity.

40.

Plaintiff avers that in the alternative, Defendants have been unjustly enriched by the efforts, skill, and work of Plaintiff which entitles Plaintiff to recovery under quantum meruit and/or damages based upon unjust enrichment from ~~by~~ the above-named Defendants.

41.

**<u>CIVIL CODE ARTICLE 2315</u>**

"Louisiana Civil Code Art. 2315. Liability for acts causing damages

A. Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."

La. Civ. Code Art. 2315 is governed by the doctrine of duty /risk. Each of the Defendants owes a duty to Plaintiff to ensure that he is properly compensated for his financial contribution to the partnership, as required by the agreement they had acted under. By failing to ensure that Plaintiff was included in the distribution of profits or benefits, the Defendants have breached their duty owed to Plaintiff. But for the

individual Defendant's actions taken to exclude Plaintiff from being included in the limited liability company that secured the rights to the project, and failure to ensure that he IS compensated ("the fault") Plaintiff would have an ownership interest, guarantee of reasonable compensation for his efforts, as well as an automatic right to share in the project benefits and profits. The development contract has not yet been completed and on information and belief, no monies or profits have been received from the renovation and/or sale or lease of the completed project. When profits, monies, or other distributions are made, Plaintiff is entitled to share in same.

42.

**LOUISIANA CIVIL CODE ARTICLE 2324**

"Louisiana Civil Code Art. 2324. Liability as solidary or joint and divisible obligation

A. He who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act."

Defendants, individually and as managers or members of the corporate entity defendants conspired to commit the violations stated above, and to deprive Plaintiff of his share of the project and the profits after having relied upon him to use his experience and skills to secure the financing that they themselves had not or could not secure.

They are liable under Art. 2324 for this concerted action.

43.

**VICARIOUS LIABILITY/SERVANT MASTER DOCTRINE**

The Defendant entities are liable for the wrongful actions of the members, agents, employees, directors, officers, and others acting on their behalf.

**DAMAGES**

44.

Plaintiff further avers that he relied to his detriment upon the representations, explicit and implicit, of the above-named Defendants, including, but not limited to, Joseph Stebbins, CCNO, Yoel Shargian, El Ad, and/or the corporate/limited liability defendants listed hereinabove and that all of the above-named Defendants should be ordered to compensate Plaintiff the amount to which the Plaintiff has been impoverished or the Defendants have been enriched on the basis of quantum meruit, detrimental reliance, and/or unjust enrichment for Plaintiff's efforts in obtaining the financing for The Charity Hospital Project.

45.

Plaintiff, Moshe Shargian avers that he has sustained pecuniary and non-pecuniary damages as a result of the actions and inactions of Defendants in an amount as is appropriate under the premises, including but not limited to, attorneys' fees, costs, penalties and general damages. He is also entitled to declaratory and injunctive relief, specifically, the right to an order from the Court enjoining Defendants from receiving and depositing payments in connection with the project without securing Plaintiff's participation in any account or distribution made to the defendants pursuant to the project.

46.

Plaintiff, Moshe Shargian, avers that he has suffered severe mental anguish and emotional damages as a result of the actions and inactions of Defendants herein.

47.

**JURY DEMAND**

Plaintiff asserts that his damages exceed that amount necessary for a trial by jury and therefore requests a jury trial.

48.

**DECLARATORY JUDGMENT UNDER THE LOUISIANA DECLARATORY JUDGMENT ACT**

The allegation of the paragraphs above are incorporated and included herein as if expressly set forth. The Claim for Declaratory Relief is Pled in the Alternative and is Governed by the Louisiana Declaratory Judgment Act and Code of Civil Procedure, Arts. 1871 et. seq.

49.

"LA. CODE Civ. P. arts. 1871-83 Declaratory Judgment

Art. 1871. Declaratory judgments; scope
Courts of record within their respective jurisdictions may declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for; and the existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate. The declaration shall have the force and effect of a final judgment or decree.

LA Code Civ Pro 1872
Art. 1872. Interested parties may obtain declaration of rights, status, or other legal relations

> A person interested under a deed, will, written contract or other writing constituting a contract, or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.

> Art. 1873. Construction of contract
>
> A contract may be construed either before or after there has been a breach thereof.

The declaratory judgment statute as set forth in the above articles derives from LA. CODE Civ. P. art. 1872: "A person . . . whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder."

50.

The Louisiana Declaratory Judgment Act and CCP Art. 1878 further state as follows:

> Art. 1878. Supplemental relief
>
> Further relief based on a declaratory judgment or decree may be granted whenever necessary or proper. The application therefor shall be by petition to a court having jurisdiction to grant the relief. If the application is considered sufficient, the court, on reasonable notice, shall require any adverse party whose rights have been adjudicated by the declaratory judgment or decree, to show cause why further relief should not be granted forthwith.

51.

Plaintiff is entitled to a Declaration of 1) his entitlement to share in the profits and benefits of the project and 2) that he met his obligations to perform under the contract

as recited herein and that 3) all adverse parties must appear herein to respond and show cause why the relief should not be granted.

**PRAYER**

**WHEREFORE**, Plaintiff, Moshe Shargian, prays that this First Amended and Restated Complaint And In The Alternative Petition For Declaratory Relief be filed and that Defendants, Yoel Shargian, Joseph Stebbins, CCNO Development, Inc., El Ad Group, El Ad US Holding, Inc., CHR Partners, LLC, 1532 Tulane Partners, Inc., 1532 Tulane Holdco, LLC, and 1532 Tulane Investors, LLC be duly cited and served with a copy of the original Petition filed herein on November 12, 2021 and this First Amended and Restated Petition And In The Alternative, Petition For Declaratory Relieft to appear and answer same, and that, after due proceedings, there be judgment herein in favor of Plaintiff, Moshe Shargian, and against Defendants, Yoel Shargian, Joseph Stebbins, CCNO Development, Inc., El Ad Group, El Ad US Holding, Inc., CHR Partners, LLC, and 1532 Tulane Partners, Inc., 1532 Tulane Holdco, LLC, and 1532 Tulane Investors, LLC, in an amount reasonably calculated to compensate Plaintiff, Moshe Shargian, including, but not limited to, damages for unjust enrichment, breach of contract, quantum meruit, mental anguish, and , together with attorney's fees, costs, legal interest thereon, from the date of judicial demand until paid, and for all costs of these

proceedings, and all general and equitable relief.

RESPECTFULLY SUBMITTED:

LANNY R. ZATZKIS, T.A. (Bar #13781)
LAW OFFICES OF LANNY R. ZATZKIS, LLC
1511 Robert Street
New Orleans, Louisiana 70115
Telephone: (504) 523-2266
Facsimile: (504) 593-9921
Attorneys for Moshe Shargian

**ASSOCIATED COUNSEL IN FEDERAL COURT:**

LAW OFFICES OF MARIE RICCIO
700 CAMP ST.
NEW ORLEANS, LA 70003
PHONE: 504-528-9500 ET. 239
FAX: 206-457-1945
EMAIL: marie@officericcio.com

**PLEASE SERVE:**
*With Restated Petition/Complaint for Damages and Alternative Petition for Declaratory Relief*
**YOEL SHARGIAN**
VIA LONG ARM SERVICE:
52 Christie Street
Tenafly, New Jersey 07670-1603

**AND THROUGH HIS COUNSEL OF RECORD:**
James M. Garner
John T. Balhoff, II
Melissa R. Harris
909 Poydras Street, Twenty-eighth Floor
New Orleans, LA. 70112

*With First Amended and Restated Petition/Complaint for Damages and Alternative Petition for Declaratory Relief*
**EL AD GROUP dba EL AD US HOLDING, INC. a/d/b/a EL-AD GROUP LOUISIANA (2016)LLC I and II**

VIA HAGUE CONVENTION:

VIA LONG ARM SERVICE:
*Thru its agent for service of process –*
SHEARA ARBIT
575 MADISON AVENUE, 22ND FLOOR
NEW YORK, NY, 10022

***OR***
**EL AD US HOLDING, INC.**
VIA LONG ARM SERVICE:
*Thru its agent for service of process –*
THE CORPORATION TRUST COMPANY
CORPORATION TRUST CENTER 1209 ORANGE ST
WILMINGTON, DE 19801

*With First Amended and Restated Petition/Complaint for Damages and Alternative Petition for Declaratory Relief*
**CHR PARTNERS, LLC**
*Thru its agent for service of process –*
JOSEPH STEBBINS
4127 S. CLAIBORNE AVE.
NEW ORLEANS, LA 70125

*With First Amended and Restated Petition/Complaint for Damages and Alternative Petition for Declaratory Relief*
**JOSEPH STEBBINS,** personally
4127 S. CLAIBORNE AVE.
NEW ORLEANS, LA 70125

*With First Amended and Restated Petition/Complaint for Damages and Alternative Petition for Declaratory Relief*
**1532 TULANE PARTNERS, INC.**
*Thru its agent for service of process –*
JOSEPH STEBBINS
4127 S. CLAIBORNE AVE.
NEW ORLEANS, LA 70125

*With First Amended and Restated Petition/Complaint for Damages and Alternative Petition for Declaratory Relief*
**1532 TULANE HOLDCO, LLC**
*Thru its agent for service of process –*
JOSEPH STEBBINS
4127 S. CLAIBORNE AVE.
NEW ORLEANS, LA 70125

*With First Amended and Restated Petition/Complaint for Damages and Alternative Petition for Declaratory Relief*
**CCNO DEVELOPMENT, LLC**
*Thru its agent for service of process –*
JOSEPH STEBBINS
4127 S. CLAIBORNE AVE.
NEW ORLEANS, LA 70125

*With First Amended and Restated Petition/Complaint for Damages and Alternative Petition for Declaratory Relief*

**1532 TULANE INVESTORS, LLC**
*Thru its agent for service of process -*
JOSEPH STEBBINS
4127 S. CLAIBORNE AVE.
NEW ORLEANS, LA 70125

Serial No. 13/2021

Form No. 1

## AUTHENTICATION OF SIGNATURE

I, the undersigned, Eitan Ozer Notary holding license no. 2084444 hereby certify that on 29/12/2021 appeared before me at my offices located at 5 Dganit st. Hod Hasharon, 4520663 Mr. Moshe S Shargian.

☐ who is known to me personally

☒ whose identity has been proven to me by ID card Isral number 040281529 issued on 10/02/2002

And I am convinced that the person standing before me understood fully the significance of the action and voluntarily signed the attached document marked with the letter / number 1

In witness whereof I hereby authenticate the signature of Mr. Moshe S Shargian by my own signature and seal this day 29/12/2021

Notary fee 193 NIS

מס׳ סידורי 13/2021

טופס מס׳ 1

## אימות חתימה

אני החתום מטה איתן עוזר, נוטריון בעל רישיון מספר 2084444 מאשר כי ביום כ״ה בטבת התשפ״ב ניצב לפניי במשרדי שבמען דגנית 5 הוד השרון, 4520663 מר משה-שיקו שרגיאן

☐ מוכר לי באופן אישי

☒ שזהותו הוכחה לי על פי תעודת זהות ישראל מספר 040281529 שהונפקה ביום 10/02/2002

ושוכנעתי כי הניצב לפניי הבין הבנה מלאה את משמעות הפעולה וחתם מרצונו החופשי על המסמך המצורף והמסומן באות / מספר 1

לראיה אני מאמת את חתימתו של מר משה-שיקו שרגיאן בחתימת ידי ובחותמי, היום כ״ה בטבת התשפ״ב

שכר נוטריון 193 שקלים חדשים.

חותם הנוטריון
Notary's Seal

נוטריון * NOTAIRE * NOTARY
איתן עוזר
EITAN OZER

חתימה
Signature

נוטריון * NOTAIRE * NOTARY
איתן עוזר
EITAN OZER

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MOSHE SHARGIAN

CIVIL ACTION NO.
21 CV 02282 MVL -DPC

VERSUS

YOEL SHARGIAN,
JOSEPH STEBBINS,
CCNO DEVELOPMENT,
LLC, EL AD GROUP,
EL AD US HOLDING, INC.,
CHR PARTNERS, LLC,
1532 TULANE PARTNERS, INC.,
1532 TULANE HOLDCO, LLC,
AND TULANE INVESTORS, LLC

JUDGE MARY VIAL LEMMON

MAGISTRATE JUDGE
DONNA PHILLIPS CURRAULT

VERIFICATION AFFIDAVIT

STATE OF ISRAEL

**BEFORE ME,** the undersigned authority, a Notary Public, duly commissioned and qualified in and for the State of Israel, City of Hod Hasharon aforesaid, personally came and appeared:

MOSHE SHARGIAN

who after first being duly sworn, did depose and say that he has read the foregoing First Amended and Restated Complaint, and that the allegations contained therein are true and correct to the best of his knowledge, information and belief.

______________________________
MOSHE SHARGIAN

SWORN TO AND SUBSCRIBED
BEFORE ME, NOTARY, this _____ day
of ____________________, 2022.

______________________________
NOTARY PUBLIC

(Print name)______________________________