UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MOSHE SHARGIAN                                          CIVIL ACTION

VERSUS                                                        NO. 21-2282

YOEL SHARGIAN, ET AL.                           SECTION "R" (2)


**<u>ORDER AND REASONS</u>**


Before the Court is plaintiff Moshe Shargian's motion to remand.[1]
Defendants Yoel Shargian, Joseph Stebbins, CCNO Development, LLC, CHR
Partners, LLC, 1532 Tulane Partners, Inc., 1532 Tulane Holdco, LLC, and
1532 Tulane Investors, LLC, oppose the motion.[2]  For the following reasons,
the Court denies plaintiff's motion.


## I.    BACKGROUND

This case arises from the redevelopment of the former Charity Hospital
building, located at 1532 Tulane Avenue in New Orleans, Louisiana.  The
Charity Hospital building was severely damaged by Hurricane Katrina in
2005, and has never been reopened.  As recounted in plaintiff's complaint,

---

[1]      R. Doc. 9.
[2]      R. Doc. 11.

in 2015, under Governor Bobby Jindal, the Louisiana Division of Administration issued a public "Request for Information" that invited developers to propose redevelopment plans for the now vacant Charity Hospital building.[3]  Plaintiff, Moshe Shargian, represents that he is a real estate developer, who has "followed the history and development of [the] Charity Hospital after Hurricane Katrina."[4]

Plaintiff alleges that, in 2015, he was approached by New Orleans developer, Joseph Stebbins, who sought plaintiff's help in obtaining financing for the creation of a redevelopment proposal for the Charity Hospital project.[5]  Plaintiff represents that, in response, he reached out to his cousin, defendant Yoel Shargian, a New York City developer, who agreed to provide financing for the proposal and, if the proposal was successful, for the entire redevelopment project.[6]  Plaintiff further states that Yoel Shargian asked plaintiff to assist in facilitating the financing for the project, and asked plaintiff to be his "local representative."[7]  In exchange, defendant allegedly promised plaintiff that plaintiff would be compensated for his work "by receiving fifty (50%) percent of any fee, bonus, distribution, tax credit, or any

---

[3]     R. Doc. 1-1 ¶ 12.
[4]     *Id.* ¶ 13.
[5]     *Id.* ¶ 14.
[6]     *Id.* ¶ 15.
[7]     *Id.* ¶¶ 15-16.

other renumeration" received by defendant related to the Charity Hospital project.[8]  Plaintiff asserts that he spent the next several years working on defendant's behalf, noting that he "supervised the development of the proposal," had meetings on an "almost daily basis" with Joseph Stebbins and other "Consultants," and "solicited potential investors, including one . . . [who] ultimately financed the proposal and the renovation cost of the Charity Hospital project."[9]

CHR Partners, LLC, whose partners included Yoel Shargian and Joseph Stebbins, was one of the four finalists in the 2015 bid process.[10] Ultimately, the 2015 bid proposals never went anywhere, and the bid process was reopened in 2018 under Governor John Bel Edwards.[11]  Plaintiff represents that defendant again submitted a proposal, this time through a "newly-formed entity," 1532 Tulane Partners, LLC, which plaintiff asserts is a successor or affiliate of CHR Partners, LLC.[12]  1532 Tulane Partners, LLC's bid was ultimately successful, and it was selected as the preferred developer for the Charity Hospital complex.[13]

---

[8]     *Id.* ¶ 16.

[9]     *Id.* ¶¶ 17, 21.

[10]    *Id.* ¶ 25.

[11]    *Id.* ¶ 28.

[12]    *Id.* ¶¶ 30-31.

[13]    *Id.* ¶ 33.

Plaintiff represents that, despite that 1532 Tulane Partners won the bid, plaintiff has never been compensated for his efforts on behalf of defendant. Specifically, plaintiff contends that, although he was promised compensation for his efforts, defendant "refused to honor his obligations," and refused to "acknowledge the significant and substantial work performed by [plaintiff] to ensure the viability and success of the [p]roposal."[14]

On November 12, 2021, plaintiff filed a petition in the Civil District Court for the Parish of Orleans against defendant Yoel Shargian, seeking compensation for his alleged services on behalf of defendant.[15] On December 10, 2021, Yoel Shargian removed the lawsuit to this Court on the basis of diversity of citizenship.[16] Plaintiff is domiciled in Louisiana, and Yoel Shargian is domiciled in New Jersey.[17]

On December 30, 2021, plaintiff filed an amended complaint, without leave of court, purporting to add eight defendants, six of which are domiciled in Louisiana: (1) Joseph Stebbins, (2) CCNO Development, LLC, (3) CHR Partners, LLC, (4) 1532 Tulane Partners, Inc., (5) 1532 Tulane Holdco, LLC,

---

[14]    *Id.* ¶ 36.
[15]    R. Doc. 1-1.
[16]    R. Doc. 1.
[17]    *Id.* ¶¶ 37-38.

4

and (6) 1532 Tulane Investors, LLC.[18]  Plaintiff asserts that, "without his efforts in obtaining financing, none of the Defendants would have been successful in obtaining the Charity Hospital Project."[19]  The amended complaint reasserts plaintiff's claims for detrimental reliance, breach of contract, and unjust enrichment, and adds new claims arising in tort, and for a declaratory judgment under the Louisiana Declaratory Judgement Act.[20]

Nine days after filing the amended complaint, plaintiff filed this motion to remand the case to state court, arguing that his purported joinder of non-diverse defendants destroys this Court's diversity jurisdiction.[21] Plaintiff further asserts that he filed his amended complaint as a "matter of course" in compliance with Rule 15(a)(1).[22]  Defendants contend that plaintiff should have sought leave before filing his amended complaint seeking to add non-diverse defendants that would divest this Court of jurisdiction, and that regardless, the Court should deny the joinder of the

---

[18]     R. Doc. 3 ¶ 1.  In addition to the six non-diverse defendants, plaintiff also added (1) "Elad Group d/b/a El Ad US Holdings, Inc. a/d/b/a El-Ad Group Louisiana (2016) LLC I and II," and (2) XYZ Insurance Company."  *Id.*  These entities have not been served with process, nor have they waived service.

[19]     *Id.* ¶ 30.

[20]     *Id.* ¶¶ 35-51.

[21]     R. Doc. 9.

[22]     R. Doc. 9-1 at 9-10.

non-diverse defendants and deny plaintiff's motion to remand.[23]  The Court

considers the parties' arguments below.


## II.    DISCUSSION

### A.    Post-Removal Joinder of Non-Diverse Defendants

As an initial matter, the Court must address whether plaintiff has

successfully added non-diverse defendants by filing an amended complaint

without leave of court, thereby requiring remand of the case pursuant to 28

U.S.C. § 1447(e).  Under 28 U.S.C. § 1447(e), when an amended pleading

would destroy diversity jurisdiction, the court has discretion to either deny

joinder of the non-diverse parties, or permit joinder and remand the matter

to state court.  28 U.S.C. § 1447(e).  If a court permits the post-removal

joinder of a non-diverse defendant, the court is required to remand under

section 1447(e).  *Borden v. Allstate Ins. Co.*, 589 F.3d 168, 172 (5th Cir.

2009).

Plaintiff asserts that his amended pleading is governed by Federal Rule

of Civil Procedure 15(a), and is within the time frame set out by Rule 15 for

filing an amended pleading without leave of court.[24]   Rule 15(a), which

---

[23]    R. Doc. 11 at 6, 11.

[24]    R. Doc. 9-1 at 2.  Under Rule 15(a), a "party may amend its pleadings
once as a matter of course within: (A) 21 days after serving it, or (B) if

generally governs pretrial amendments to pleadings, provides that a court will "freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a).  But when a plaintiff seeks to amend its complaint to add a non-diverse party after the case has been removed, "the district court must apply a higher level of scrutiny than required under Fed. R. Civ. P. 15(a)."  *Allen v. Walmart Stores, L.L.C.*, 907 F.3d 170, 185 (5th Cir. 2018) (citing *Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987)).  Thus, "courts have concluded that when an amendment would deprive a federal court of subject matter jurisdiction, a party may not rely on Rule 15(a) to amend a pleading without leave of court[,] and such an amendment must be analyzed pursuant to § 1447(e)."  *Schindler v. Charles Schwab & Co.*, No. 05-82, 2005 WL 1155862, at *2 (E.D. La. May 12, 2005) (collecting cases); *see also Dillard v. Albertson's, Inc.*, 226 F.3d 642, 642 (2000) (per curiam) (stating that plaintiff's argument that she was not required to seek leave to amend her complaint to add a non-diverse defendant under Rule 15(a) "would be persuasive except that 28 U.S.C. § 1447(e) specifically confers on the district

---

the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.  Here, defendant has not yet filed a responsive pleading.

court the responsibility to scrutinize attempted joinder of non-diverse parties in cases previously removed to federal court").

Here, plaintiff was required to seek leave of court before filing his amended complaint that purported to add six non-diverse defendants. Plaintiff's failure to do so means that his amended complaint was improperly filed and may be stricken from the record. *See Allen*, 907 F.3d at 182, 186 (affirming the district court's decision to strike plaintiff's amended complaint that added non-diverse defendants and that was filed without leave); *Parker v. CitiMortgage, Inc.*, No. 14-173, 2015 WL 2405168, at *2 (S.D. Miss. May 20, 2015) (holding that plaintiffs' "reliance on Rule 15 is unavailing," and concluding that plaintiffs' "First Amended Complaint was improperly filed and should be stricken"). Nonetheless, because plaintiff has already filed his amended complaint, and because both parties have already briefed the question of post-removal joinder, the Court construes plaintiff's amended complaint as a motion for leave to file an amended complaint. *See Nelson v. Complete Bus. Sols. Grp., Inc.*, No. 18-962, 2019 WL 3759450, at *2 (W.D. Tex. Aug. 8, 2019), *report and recommendation adopted*, No. 18-962, 2019 WL 6048010 (W.D. Tex. Aug. 30, 2019) ("[T]his Court will exercise its discretion to construe the First Amended Complaint as a motion for leave to file a First Amended Complaint.").

8

**B.    The *Hensgens* Factors**

As noted above, when a proposed amendment seeks to add new non-diverse defendants in a removal case, courts are required to "scrutinize [the] amendment more closely than an ordinary amendment." *Hensgens*, 833 F.2d at 1182.  In *Hensgens*, the Fifth Circuit recognized that an amended pleading that names non-diverse defendants in a removal action gives rise to the "competing interests" of avoiding "parallel federal/state proceedings" and the diverse defendant's "interest in retaining the federal forum." *Id.* The court in *Hensgens*[25] laid out several non-exclusive factors for courts to consider when balancing these competing interests, including: (1) the extent to which the purpose of the amendment is to defeat federal jurisdiction; (2) whether the plaintiff has been dilatory in amending; (3) whether the plaintiff will be significantly injured if the amendment is not permitted; and (4) any other factors bearing on the equities.  *Id.*

The first *Hensgens* factor is the extent to which the purpose of plaintiff's proposed amendment is to defeat federal jurisdiction.  *Id.*  In examining this factor, courts have recognized that a plaintiff's failure to join

---

[25]    Although the Fifth Circuit decided *Hensgens* before Congress enacted 28 U.S.C. § 1447(e), the court has subsequently approved its application to § 1447(e) cases. *See Cobb v. Delta Exports, Inc.*, 186 F.3d 675, 677 (5th Cir. 1999).

non-diverse defendants whose identities plaintiff knew prior to removal suggests that the purpose of an amendment is to destroy diversity jurisdiction. *See, e.g.*, *Anzures v. Prologis Tex. I LLC*, 886 F. Supp. 2d 555, 563-64 (W.D. Tex. 2012) (finding that, because it "appears that Plaintiff has known of the facts supporting [a non-diverse defendant's] alleged liability since the beginning of the litigation, . . . the fact that Plaintiff waited until this late date to attempt to add [the non-diverse defendant] is suspicious, and appears to be purely for the purpose of defeating diversity jurisdiction"); *see also G & C Land v. Farmland Mgmt. Servs.*, 587 F. App'x 99, 103 (5th Cir. 2014) (per curiam) (affirming the district court's decision to deny plaintiff leave to amend its complaint when the court found, among other things, that plaintiff "sought amendment for the purpose of destroying diversity jurisdiction because . . . [plaintiff] was aware of the identities and activities of the non-diverse defendants before it filed suit in state court"). Courts have also noted that when a plaintiff seeks to add non-diverse defendants "shortly after removal, but prior to any additional discovery," this may further suggest "that the amendment is sought for the purpose of defeating diversity." *Martinez v. Holzknecht*, 701 F. Supp. 2d 886, 889-90 (S.D. Tex. 2010) (citing *Mayes v. Rapoport*, 198 F.3d 458, 463 (4th Cir. 1999)). Finally, courts have concluded that when a "plaintiff states a valid

claim against a defendant, it is unlikely that the *primary* purpose of bringing those defendants into a litigation is to destroy diversity jurisdiction." *See Schindler*, 2005 WL 1155862, at *3 (collecting cases).

Here, it is undisputed that plaintiff knew of the six non-diverse defendants when he filed his state-court lawsuit. Plaintiff's state-court petition against defendant Yoel Shargian repeatedly mentions Stebbins,[26] CHR Partners,[27] 1532 Tulane Partners,[28] 1532 Tulane Holdco,[29] and 1532 Tulane Investors.[30] The only non-diverse defendant not mentioned in plaintiff's initial state-court petition is CCNO Development, LLC. But plaintiff states in his amended complaint that Mr. Stebbins is CCNO Development LLC's sole member and manager. Further, all of plaintiff's allegations in the amended complaint against CCNO Development, LLC are also brought against Stebbins "individually and/or as owner of Defendant, CCNO Development."[31] The Court thus finds that plaintiff knew of the identities of the non-diverse defendants when he filed this case.

---

[26]    Joseph Stebbins is referred to in plaintiff's original complaint by name and under the term "Consultants," which refers jointly to Stebbins and Adam Vodonovich. R. Doc. 1-1 ¶¶ 14, 17, 18, 19, 20, 21, 26, 27, 29, 34.

[27]    *Id.* ¶¶ 22, 25, 28, 29, 31, 32, 33, 34.

[28]    *Id.* ¶¶ 30, 31, 32, 33, 34, 37.

[29]    *Id.* ¶ 37.

[30]    *Id.*

[31]    R. Doc. 3 ¶¶ 1, 15.

The Court also finds that plaintiff was aware not only of the non-diverse defendants' identities, but also of their alleged conduct in connection with the redevelopment of the Charity Hospital.  Plaintiff recites the same underlying facts that give rise to his claims against the non-diverse defendants in both his initial complaint and amended complaint.  Moreover, the most recently dated allegation of fact that plaintiff recites in both his initial and amended complaint took place in January 2019.  This shows that plaintiff was aware of the non-diverse defendants' role in the redevelopment of the former Charity Hospital since before the inception of this suit in 2021.  Plaintiff's pre-existing knowledge of the added defendants is further confirmed by plaintiff's assertion in his motion to remand that the "entities joined in the Amended Complaint would not exist had it not been for the efforts of Plaintiff."[32]

The Court finds that plaintiff's awareness of the "identities and activities of the non-diverse defendants" before he filed suit in state court points to the conclusion that he "sought amendment for the purpose of destroying diversity jurisdiction."  *See G & C Land*, 587 F. App'x at 103.  And aside from plaintiff's broad denial that he added the non-diverse defendants

---

[32]   R. Doc. 9-1 at 13.

to defeat federal jurisdiction,[33] plaintiff does not offer a convincing explanation for his failure to name the non-diverse defendants in his original complaint.

Moreover, the timing of plaintiff's amended complaint and motion to remand is telling.  Plaintiff filed his amended complaint twenty days after this case was removed to federal court, and prior to any additional discovery. This strongly suggests that "[p]laintiff has not acquired new information" in the interim, and "further indicates that the amendment is sought for the purpose of defeating diversity." *See Martinez*, 701 F. Supp. 2d at 890. Additionally, plaintiff moved to remand the case only nine days after he filed his amended complaint.  The close timing of these events indicates that the amendment's primary purpose was to defeat this Court's jurisdiction. *See Jacobsson v. Traditions Senior Mgmt., Inc.*, No. 20-507, 2021 WL 1145624, at *6 (M.D. La. Feb. 23, 2021), *report and recommendation adopted*, No. 20-507, 2021 WL 1138054 (M.D. La. Mar. 24, 2021) ("[T]hat Plaintiff filed a Motion to Remand days after filing his Motion to Amend demonstrates that the purpose of [the] amendment is to defeat diversity jurisdiction by amending claims against an improperly joined defendant after removal.").

---

[33]     *Id.* at 12.

Finally, the Court must evaluate whether plaintiff has plausibly alleged viable claims against the in-state defendants in his amended complaint. *See Carollo v. ACE Am. Ins. Co.*, No. 18-13330, 2019 WL 5294933, at *4 (E.D. La. Oct. 18, 2019) ("Case law is, however, clear when considering the *Hensgens* first factor, the Court should factor most greatly whether the proposed amendment states a valid claim."). In his amended complaint, plaintiff alleges the following causes of action against the non-diverse defendants: (1) detrimental reliance, (2) breach of contract, (3) unjust enrichment, (4) claims arising in tort, and (5) declaratory relief under the Louisiana Declaratory Judgment Act. The Court examines each of plaintiff's causes of action to determine whether he has stated viable claims in his amended complaint.

### 1. *Detrimental Reliance*

To establish a claim for detrimental reliance under Louisiana law, plaintiff must establish three elements by a preponderance of the evidence: "(1) a representation by conduct or word; (2) justifiable reliance; and (3) a change in position to one's detriment because of the reliance." *Luther v. IOM Co., LLC*, 130 So. 3d 817, 825 (La. 2013). "A condition precedent to proving a claim for detrimental reliance is demonstrating the existence of a promise upon which the injured party could reasonably rely." *Oliver v. Cent. Bank*,

658 So. 2d 1316, 1323 (La. App. 2 Cir. 1995).  Here, plaintiff alleges that he is entitled to compensation from the non-diverse defendants because Stebbins requested that plaintiff "seek financing by going to Israel [which]. . . constitutes an agency or brokerage agreement."[34]  The Court finds that plaintiff's assertion that Stebbins asked him to go to Israel is not a promise or representation by Stebbins that he would compensate plaintiff for this trip.  Further, plaintiff alleges that Stebbins had "previously stated that Plaintiff should be compensated."[35]  The Court similarly does not find this statement amounts to a promise or representation by Stebbins that he *would* compensation plaintiff, and there is no basis to find that it would be reasonable for plaintiff to rely on this statement.  Plaintiff has not adequately alleged the elements of his detrimental-reliance claim against the non-diverse defendants.

2.   *Breach of Contract*

Under Louisiana law, "[t]he essential elements of a breach of contract claim are [that] (1) the obligor[] undert[ook] . . . an obligation to perform, (2) the obligor failed to perform the obligation (the breach), and (3) the failure to perform resulted in damages to the obligee."  *Favrot v. Favrot*, 68

---

[34]   R. Doc. 3 ¶ 35.
[35]   *Id.* ¶ 32.

So. 3d 1099, 1108-09 (La. App. 4 Cir. 2011).  Plaintiff, as the party "who is demanding performance of an obligation, must prove the existence of the obligation." *Suire v. Lafayette City-Par. Consol. Gov't,* 907 So. 2d 37, 58 (La. 2005).  Plaintiff has not done so here.  Plaintiff states that he "entered into an agreement with the Defendants to use his efforts, skills, contacts, experience, and knowledge to secure finding on their behalf."[36]  Aside from this conclusory statement, plaintiff has not provided any evidence that he entered into a contract with the non-diverse defendants in which they promised plaintiff that he would be compensated for his efforts related to the bid.  The only contract, oral or written, that is mentioned in plaintiff's amended complaint is between him and defendant Yoel Shargian, who plaintiff represents agreed to share the profits from the Charity Hospital Project with him.[37]  The absence of a contract with Stebbins or the non-

---

[36]  *Id.* ¶ 36.

[37]  *Id.* ¶ 17.  In plaintiff's initial complaint, plaintiff alleged that Yoel Shargian agreed that plaintiff "would be compensated for his efforts by receiving fifty (50%) percent of any fee, bonus, distribution, tax credit[,] or any other renumeration received by [Yoel Shargian] related to the Charity Hospital Project." R. Doc. 1-1 ¶ 16.  Plaintiff dropped the specific details of this alleged agreement in his amended complaint, and instead broadly states that he "relied on his cousin's representations and agreement to include him in the profits to be derived from the Charity Hospital Project, namely that if the project was successful, the profits would be shared with [plaintiff]." R. Doc. 3 ¶ 17.

diverse defendants precludes plaintiff from successfully asserting a breach-of-contract claim against the in-state defendants.

### 3. *Unjust Enrichment*

Under Louisiana Civil Code article 2298, the remedy of unjust enrichment is subsidiary in nature, and is "not . . . available if the law provides another remedy." *Walters v. MedSouth Record Mgmt., LLC*, 38 So. 3d 243, 244 (La. 2010) (quoting *Mounton v. State*, 525 So. 2d 1136, 1142 (La. App. 1 Cir. 1988)).  Here, as discussed above, plaintiff has asserted several causes of action against the non-diverse defendants in addition to his unjust-enrichment claim.  Regardless of plaintiff's ultimate success on these additional claims, he is precluded from bringing an action for unjust enrichment.  *See Ferrara Fire Apparatus, Inc. v. JLG Indus., Inc.*, 581 F. App'x 440, 443-44 (5th Cir. 2014) (per curiam) ("[T]he important question is whether another remedy is available, not whether the party seeking a remedy will be successful." (citing *Garber v. Baden & Ranier*, 981 So. 2d 92, 100 (La. App. 3 Cir. 2008))).

### 4. *Louisiana Civil Code Article 2315*

Louisiana Civil Code article 2315 provides the general standard for tort liability under Louisiana law: "Every act whatever of man that causes damages to another obliges him by whose fault it happened to repair it."  La.

Civ. Code art. 2315.  To state a claim for negligence, a plaintiff must allege that (1) the defendant had a duty to conform his or her conduct to a specific standard of care; (2) the defendant failed to conform his or her conduct to the appropriate standard; (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries; (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries, and (5) actual damages. *See Davis v. Witt*, 851 So. 2d 1119, 1127 (La. 2003).

Plaintiff alleges that the defendants had a duty under "the agreement they . . . acted under" to ensure that plaintiff "is properly compensated for his financial contribution to the partnership."[38]  He alleges that defendants breached that duty by failing to ensure his inclusion in the distribution of profits or benefits.[39]  Thus, plaintiff relies on the same conduct for his tort and contract claims.  "Louisiana courts recognize that the same acts or omissions may constitute breaches of both general duties and contractual duties, giving rise to actions in both tort and contract."  *Alford v. Anadarko E & P Onshore LLC*, No. 13-5457, 2014 WL 1612454, at *13 (E.D. La. Apr. 22, 2014) (citations omitted).  In determining whether a breach of a contractual duty can also give rise to a tort claim, a court must decide whether the breach

---

[38]    R. Doc. 3 ¶ 41.

[39]    *Id.*

18

was passive or active.  *See Huggs, Inc. v. LPC Energy, Inc.*, 889 F.2d 649, 655 (5th Cir. 1989).  A "passive breach of contract" arises when a "person neglects to do what he is obligated under a contract," whereas as "active breach of contract" occurs when a person "negligently performs a contractual obligation."  *Id.*  Under Louisiana law, a passive breach of contract warrants only a claim for breach of contract, whereas an active breach of contract can give rise to both a contractual and tort claim.  *Id.*  (citing *Hennessy v. S. Cent. Bell Tel.*, 382 So. 2d 1044 (La. App. 2 Cir. 1980).

Here, plaintiff has not alleged that defendants negligently performed their contractual obligations, or even "performed" anything at all.  Instead, plaintiff asserts that defendants failed to perform their obligation under the contract, which was to ensure that plaintiff was compensated for his work. The alleged breach of contract claim is passive, and thus plaintiff's tort claim against the non-diverse defendants fails.  *See Alford*, 2014 WL 1612454, at *14.

5. *Conspiracy and Solidary Liability*

Plaintiff alleges that the non-diverse defendants "individually and as managers or members of the corporate entity . . . conspired to commit the violations stated [in the amended complaint]."[40]  The Louisiana Supreme

---

[40]      *Id.* ¶ 42.

Court has explained that article 2324 "does not by itself impose liability for a civil conspiracy, [because] [t]he actionable element in a claim under this Article is not the conspiracy itself, but rather the tort which the conspirators agreed to perpetrate and which they actually commit in whole or in part." *Ross v. Conoco, Inc.*, 828 So. 2d 546, 552 (La. 2002) (quoting *Butz v. Lynch*, 710 So. 2d 1171, 1174 (La. App. 1 Cir. 1998)).    Because, as noted above, plaintiff has not alleged a plausible tort claim, he does not have a claim for conspiracy to commit such a tort.    Plaintiff similarly does not have a claim for vicarious liability, given that he has not plausibly stated that any of the non-diverse defendants' employees committed a tort while acting within the scope and course of their employment.    La. Civ. Code art. 2320; *see also Kelly v. Dyson*, 40 So. 3d 1100, 1105 (La. App. 5 Cir. 2010).    And to the extent that plaintiff asserts that the non-diverse defendants are vicariously liable for an alleged breach of contract, the Court rejects such a claim.    Vicarious liability is "inapplicable in a case involving a breach of contract by an employee." *Medx, Inc. of Fla. v. Ranger*, No. 91-3099, 1993 WL 21250, at *6 (E.D. La. Jan. 25, 1993).

    6.  *Declaratory Relief*

    In his amended complaint, plaintiff requests declarations that: (1) he is entitled to share in the profits from the project, and that (2) he has met his

"obligations to perform under the contract."[41]  He additionally requests that "all adverse parties . . . appear . . . to respond and show cause why the relief should not be granted."[42]  Plaintiff seeks this declaratory judgment under the Louisiana Declaratory Judgment Act, La. Code of Civ. P. arts. 1871, *et seq.*[43] As an initial matter, because plaintiff filed his declaratory claim in this Court, he has invoked the federal Declaratory Judgment Act, not the Louisiana Declaratory Judgment Act.  *See Chevron U.S.A., Inc. v. Atmos Pipeline & Storage, LLC*, No. 18-540, 2018 WL 4517898, at *7-8 (W.D. La. Sept. 20, 2018) ("Louisiana Code of Civil Procedure article 1871, *et seq.*, does not provide a right to a declaratory judgment in federal court because this is a procedural, not a substantive, law." (citing *State v. Bd. of Supervisors, La. State Univ. & Arg. & Mech. Coll.*, 84 So. 2d 597, 600 (La. 1955))).

The federal Declaratory Judgment Act "does not create a substantive cause of action," and instead is a procedural device that permits parties "to obtain an early adjudication of an actual controversy arising under other substantive law."  *Yor-Wic Constr. Co., Inc. v. Eng'g Design Tech., Inc.*, 329 F. Supp. 3d 320, 327 (W.D. La. 2018) (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227 (1937) and *Lowe v. Ingalls Shipbuilding*, 723 F.2d 1173, 1178

---

[41]     *Id.* ¶ 51.
[42]     *Id.*
[43]     *Id.* ¶ 48.

(5th Cir. 1984)).  Because a claim for declaratory relief is "not an independent source of federal jurisdiction," *Schilling v. Rogers*, 363 U.S. 666, 677 (1960), the dismissal of a plaintiff's predicate cause of action renders a declaratory relief claim moot.  *See Doe v. Univ. of Dayton*, 766 F. App'x 275, 291 (6th Cir. 2019) (holding that because plaintiff's "other claims have been dismissed, his declaratory judgment claim likewise fails").

Here, plaintiff predicates his request for declaratory relief on the existence of a contract.  Specifically, plaintiff invokes the provisions of the Louisiana Code that permit litigants to seek a declaratory judgment related to contractual rights and obligations.[44]  Based on these provisions, plaintiff requests a declaration that he has "met his obligations to perform under the contract," and thus is "entitle[d] to share in the profits and benefits of the project."[45]  As the Court has determined that plaintiff has not plausibly alleged a contract with any of the non-diverse defendants, or indeed, any other claim, he has no substantive cause of action on which to base his request for declaratory relief.  Thus, for the same reasons that the Court finds that plaintiff has not stated a cognizable contract claim, the Court also finds that he also has not stated a viable claim for declaratory relief.  *See Cougle v.*

---

[44]    *Id.* ¶ 49 (citing La. Code Civ. P. arts. 1872, 1873).

[45]    *Id.* ¶ 51.

*Berkshire Life Ins. Co. of Am.*, 429 F. Supp. 3d 208, 221 (E.D. La. 2019) (finding that a plaintiff "cannot maintain a claim for declaratory judgment [after] it was rendered moot by the dismissal of [plaintiff's] other claims"); *Xtria LLC v. Tracking Sys., Inc.*, No. 2007 WL 1791252, at *3 (N.D. Tex. June 21, 2007) (dismissing a declaratory judgment action under Rule 12(b)(6) because a decision on the merits of the breach-of-contract claim would render it moot).

In sum, the Court finds that plaintiff has not stated valid claims against the non-diverse defendants, suggesting that the purpose of the amendment is to defeat diversity. *See Herzog v. Johns Manville Prods. Corp.*, No. 02-1110, 2002 WL 31556352, at *2 (E.D. La. Nov. 15, 2002) ("[T]he case law indicates that as long as the plaintiff states a valid claim against the new defendants, the principal purpose of the amendment is not to destroy diversity jurisdiction."). Given the timing of plaintiff's amended complaint and motion to remand, that he knew of the non-diverse defendants when he initially filed this action, and that he sought to add claims that are not viable against the non-diverse defendants, the Court finds that the first *Hensgens* factor weighs strongly against permitting plaintiff to amend his complaint.

The second *Hensgens* factor is whether plaintiff has been dilatory in requesting the amendment. *Hensgens*, 833 F.2d at 1182. In analyzing the

second *Hensgens* factor, courts consider "the amount of time that has passed between the plaintiff's motion to amend and the filing of the original petition and notice of removal," as well as "the procedural posture of the case, particularly whether 'trial or pre-trial dates were scheduled,' or any 'significant activity beyond the pleadings stage has occurred.'" *Anzures*, 886 F. Supp. 2d at 565 (quoting *Arthur v. Stern*, No. 07-3742, 2008 WL 2620116, at *5 (S.D. Tex. June 26, 2008)).

Here, plaintiff filed his amended complaint a month and a half after he filed his state-court petition, and twenty days after the case was removed to federal court. A scheduling order has yet to be entered in this case, thus, there are no scheduled pretrial or trial dates. These facts favor a finding that plaintiff was not dilatory in seeking leave to amend. *See Schindler*, 2005 WL 1155862, at *4 (finding that the second *Hensgens* factor weighed in favor of permitting the amendment when the litigation was "still in its very early stages," and plaintiff moved to amend her complaint a month and a half after she filed in state court and less than 30 days after the case was removed); *Johnson v. Sepulveda Props., Inc.*, No. 99-2312, 1999 WL 728746, at *3 (E.D. La. Sept. 16, 1999) (finding that plaintiff's amendment that "came two months after plaintiff filed her original petition in state court . . . [was] still early enough in the proceedings so as not to be classified as dilatory for

24

purposes of *Hensgens*").  The Court thus finds that the second *Hensgens* factor weighs in favor of permitting plaintiff leave to amend.

The third *Hensgens* factor is whether plaintiff will be significantly injured by the denial of the amendment.  *Hensgens*, 833 F.2d at 1182.  In weighing whether a plaintiff would be significantly injured, courts consider whether a plaintiff can be afforded complete relief without the amendment, and whether plaintiff "could recover against the proposed nondiverse defendant[s]."  *See Gallegos v. Safeco Ins. Co. of Ind.*, No. 09-2777, 2009 WL 4730570, at *5 (S.D. Tex. Dec. 7, 2009) (finding the third *Hensgens* factor weighed in favor of denying the motion to amend when there was "no indication that [the existing defendant] would be unable to satisfy a judgment" and "because of the doubts as to [plaintiff's] ability to recover against [the proposed defendant]").  Courts also consider whether the plaintiff will be forced to litigate its claim against the non-diverse defendants in a different court system.  *See Loewe v. Singh*, No. 10-1811, 2010 WL 3359525, at *3 (S.D. Tex. Aug. 23, 2010) (noting that although plaintiff could sue the non-diverse defendant in state court, "this would result in parallel judicial proceedings that would increase costs, lead to judicial inefficiency, and may produce conflicting results").

Here, plaintiff asserts that he will be "significantly injured" if he is unable to amend his complaint because his efforts "benefitted each of the joined Defendants and/or their majority owned or wholly owned corporate entities."[46]  Plaintiff also states that it would be "prudent" for him to litigate his claims against all the defendants in a single forum.[47]  The Court finds that, aside from plaintiff's conclusory arguments, he has not given any specific reason why he would be significantly injured if he were unable to amend his complaint.  Further, plaintiff's assertions that he will be significantly injured by denial of the amendment are undermined by his initial failure to name these defendants in state court, despite being aware that his efforts allegedly benefited these defendants.

And the denial of plaintiff's attempted joinder of the non-diverse defendants will not preclude plaintiff from pursuing his claims against these defendants in state court.  Courts have regularly found that the additional expenses that a plaintiff would incur from pursuing parallel actions, by itself, does "not constitute significant prejudice." *See Martinez*, 701 F. Supp. 2d at 892 (collecting cases); *see also G & C Land*, 587 F. App'x at 103-04 (upholding the district court's decision to deny plaintiff leave to amend its

---

[46]     R. Doc. 9-1 at 13.

[47]     *Id.* at 14.  Plaintiff raises this argument under both the third and fourth *Hensgens* factors.  *Id.*  The Court will address it under the third factor.

complaint, noting that the court "found that [plaintiff] could pursue its claims against the non-diverse defendants in state courts"). Further, because plaintiff is unlikely to recover against the non-diverse defendants in state court, he deliberately chose not to sue them there in the first place, and "it is unlikely that there will be parallel state proceedings if the motion for leave to amend is denied." *Gallegos*, 2009 WL 4730570, at *5. Accordingly, the Court finds that the prejudice factor does not weigh in favor of allowing plaintiff's amendment.

Finally, under the fourth *Hensgens* factor, the Court must consider any other factors that may bear on the equities of allowing plaintiff's amendment. Neither party raises any further equitable considerations, and the Court discerns none. The Court thus finds that the fourth *Hensgens* factor is neutral.

In sum, after weighing each of the *Hensgens* factors, the Court finds that plaintiff should not be allowed to file an amended complaint naming six non-diverse defendants. The Court specifically finds that plaintiff's proposed amendment was primarily filed to defeat diversity, and that plaintiff will not be prejudiced by denial of the amendment. *See Priester v. JP Morgan Chase Bank, N.A.*, 708 F.3d 667, 679 (5th Cir. 2013), *abrogated in part on other grounds by Wood v. HSBC Bank USA, N.A.*, 505 S.W.3d 542

(Tex. 2016).  Thus, construing plaintiff's amended complaint as a motion for leave to file an amended complaint, the Court denies plaintiff leave and strikes plaintiff's amended complaint from the record.

Further, it is undisputed that the existing parties—Yoel Shargian and Moshe Shargian—are completely diverse.  Because the basis for plaintiff's motion to remand was the lack of complete diversity in light of the addition of the non-diverse defendants, the Court finds there are no grounds for remand.  Because this Court maintains subject matter jurisdiction over this case, the Court denies plaintiff's motion to remand.

## III.  CONCLUSION

For the foregoing reasons, the Court DENIES plaintiff's motion to remand.  IT IS ORDERED that plaintiff's amended complaint is struck from the record.

New Orleans, Louisiana, this __18th__ day of March, 2022.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE