UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MOSHE SHARGIAN                                          CIVIL ACTION

VERSUS                                                          NO. 21-2282

YOEL SHARGIAN                                          SECTION "R" (2)

## ORDER AND REASONS

Before the Court is defendant Yoel Shargian's motion for summary judgment.[1]  Plaintiff Moshe Shargian opposes defendant's motion.[2]  For the following reasons, the Court grants in part and denies in part defendant's motion.

## I.    BACKGROUND

This case arises from a dispute between cousins over the proceeds of a project to redevelop Charity Hospital in New Orleans, Louisiana.[3]  Plaintiff Moshe Shargian is a Louisiana-based real estate developer.[4]  His cousin,

---

[1]    R. Doc. 33.
[2]    R. Doc. 45.
[3]    R. Doc. 45-1 at 2.
[4]    *Id.*

defendant Yoel Shargian, is a New York-based officer of El Ad US Holding, Inc., a real estate development company.[5]

The parties first worked together on a real estate development project in 2013, when plaintiff identified a property on Gravier Street in New Orleans as a candidate for development.[6]  Defendant agreed to pay the $600,000 purchase price for the Gravier Street property, and plaintiff performed day-to-day work on the project, including hiring contractors and subcontractors and assisting in demolition.[7]  Non-party Joseph Stebbins assisted the parties by working to expand the area of the city that was eligible for low-income housing tax credits to include the Gravier Street property.[8]  The value of the Gravier Street property ultimately doubled.[9]  After the Gravier Street property sold, plaintiff looked into development projects at several other locations in New Orleans, none of which came to fruition.[10]

In 2015, the State of Louisiana issued a public invitation for developers to propose plans to redevelop Charity Hospital, which had been severely damaged by Hurricane Katrina.[11]  Specifically, the invitation was for

---

[5]    *Id.*
[6]    *Id.* at 3.
[7]    *Id.* at 3-4.
[8]    *Id.* at 4.
[9]    *Id.*
[10]   *Id.* at 5.
[11]   *Id.* at 8.

proposals to redevelop Charity Hospital through a sale of the property.[12] Defendant and Stebbins formed an entity called CHR Partners, LLC,[13] which submitted a redevelopment plan that included an offer to purchase the Charity Hospital property for $30 million (the "CHR Partners Bid").[14] Plaintiff was not a member of CHR Partners, but he worked on preparing the CHR Partners Bid.[15]

Ultimately, the State of Louisiana did not act on the bids submitted in response to the 2015 invitation.[16]  After Governor John Bel Edwards was elected, the new administration decided to pursue redevelopment of Charity Hospital through a long-term land lease instead of a sale of the property.[17] The Louisiana State University Real Estate and Facilities Foundation ("LSU REFF") took the lead on the redevelopment effort, and in 2018, LSU REFF

---

[12]     *Id.*

[13]     *Id.* at 9.

[14]     *Id.*

[15]     *Id.*

[16]     *Id.* at 10.  Plaintiff alleged in his complaint that the CHR Partners Bid was chosen, but it was subsequently "thrown out" after a turnover in leadership.  R. Doc. 1-7 ¶¶ 27-28.  In plaintiff's responses to defendant's Rule 56.2 statement of facts, however, plaintiff agrees with defendant's representation that the bids submitted in 2015 "languished and were never acted on by the State."  R. Doc. 45-1 at 10.

[17]     *Id.* at 11.

issued a public invitation for bids from developers to redevelop the property through a long-term land lease rather than a sale.[18]

Defendant and Stebbins submitted a bid in response to the 2018 invitation, this time through an entity called 1532 Tulane Partners, LLC (the "1532 Tulane Partners Bid").[19]  Although there was some overlap between the team involved with the CHR Partners Bid and the 1532 Tulane Partners Bid, plaintiff was not involved with 1532 Tulane Partners' work.[20]  Indeed, defendant told Stebbins that he would not submit a bid in response to the 2018 invitation if plaintiff were involved in the project, as their relationship had soured in 2017 over a dispute regarding plaintiff's compensation for his work on the Gravier Street project.[21]  Specifically, plaintiff testified that after the Gravier Street property sold, he and his father both made unsuccessful demands on defendant to remit 50% of the project proceeds to plaintiff.[22]  Instead, defendant paid plaintiff only $150,000.[23]  The payment was made on checks labeled "commission" and "fee."[24]

---

[18]    *Id.*
[19]    *Id.*
[20]    *Id.* at 14.
[21]    *Id.*
[22]    R. Doc. 33-3 (Moshe Shargian Dep. Pt. II) at 127:5-129:15.
[23]    R. Doc. 45-3 at 7-8.
[24]    *Id.*

The 1532 Tulane Partners Bid was ultimately successful.  The entity was selected by LSU REFF to develop an "adaptive reuse" of Charity Hospital and to create a mixed-use building with commercial office space, retail space, and residential space.[25]   In October 2019, LSU REFF and 1532 Tulane Partners signed a final agreement for 1532 Tulane Partners to take possession of the Charity Hospital complex under a 99-year lease.[26]

Plaintiff filed a lawsuit against defendant in the Civil District Court for the Parish of Orleans seeking 50% of the proceeds earned by defendant in connection with 1532 Tulane Partners' redevelopment work.[27]   In his complaint, plaintiff alleged that defendant agreed to pursue financing for the project, and asked plaintiff to act as the local representative for the project and to work on the proposal.[28]   He further alleged that defendant represented that plaintiff would be compensated for his efforts with 50% of any remuneration defendant received in connection with the redevelopment of Charity Hospital.[29]  Plaintiff contended that defendant ultimately cut him out of the project and denied him compensation in violation of the parties'

---

[25]    R. Doc. 45-1 at 14.

[26]    *Id.*

[27]    R. Doc. 1-7 ¶ 16.

[28]    *Id.*

[29]    *Id.*

agreement.[30]  He brought claims for breach of contract, detrimental reliance, and unjust enrichment.[31]

Defendant removed the case to this Court on the basis of diversity jurisdiction under 28 U.S.C. § 1332.[32]  Defendant then moved for summary judgment on the grounds that plaintiff has failed to identify evidence of an oral contract to pay plaintiff 50% of the proceeds he received in connection with his work redeveloping Charity Hospital.[33]  In particular, defendant contends that the parties worked together on smaller real estate projects in the past, but that defendant never committed to giving him 50% of the proceeds of any such project.  He concedes that plaintiff worked on the CHR Partners Bid, but contends that because that bid was ultimately unsuccessful, plaintiff is entitled to no compensation for his work in connection with that project.  He further asserts that plaintiff had no involvement in preparing the 1532 Tulane Partners Bid, which he characterizes as a fundamentally different project than the CHR Partners Bid.[34]

---

[30]    *Id.* ¶ 35.

[31]    *Id.* ¶¶ 36-39.

[32]    R. Doc. 1.

[33]    R. Doc. 33-1.

[34]    *See, e.g.*, R. Doc. 45-1 at 11.

Plaintiff opposes defendant's motion.[35]  He contends that there is a fact issue as to the existence of an oral contract to pay plaintiff 50% of the proceeds defendant received from the redevelopment of Charity Hospital.[36] Plaintiff concedes that he was not involved in 1532 Tulane Partners' work, but he maintains that the 1532 Tulane Partners Bid was substantially similar to the CHR Partners Bid that he helped to prepare.[37]  He contends that defendant cannot avoid compensating plaintiff for his work on the CHR Partners Bid by resubmitting it through 1532 Tulane Partners.

The Court considers the parties' arguments below.

## II.   LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).  "When assessing whether a dispute to any material fact exists, [the Court] consider[s] all of the evidence in the record but refrain[s] from making credibility determinations or

---

[35]    R. Doc. 45.
[36]    *Id.* at 7.
[37]    R. Doc. 45-1 at 14.

weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins.*, 530 F.3d 395, 398-99 (5th Cir. 2008).  All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (quoting 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2738 (2d ed. 1983)); *see also Little*, 37 F.3d at 1075.  "No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991) (quoting *Golden Rule Ins. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)).  "[T]he nonmoving party can defeat the motion" by either countering with evidence sufficient to demonstrate the "existence of a genuine dispute of material fact," or by "showing that the moving party's

evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for resolution. *See, e.g.*, *id.*; *Little*, 37 F.3d at 1075 ("Rule 56 'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" (quoting *Celotex*, 477 U.S. at 322)).

## III.   DISCUSSION

### A.   *Breach of Contract*

Under Louisiana law, the "essential elements of a breach of contract claim" are that "(1) the obligor undert[ook] an obligation to perform, (2) the

9

obligor failed to perform the obligation (the breach), and (3) the failure to perform resulted in damages to the obligee." *Favrot v. Favrot*, 68 So. 3d 1099, 1108-09 (La. App. 4 Cir. 2011).   Plaintiff, as the party "who is demanding performance of an obligation, must prove the existence of the obligation." *Suire v. Lafayette City-Par. Consol. Gov't*, 907 So. 2d 37, 58 (La. 2005).   "The facts supporting the existence of the contract must be proven by a preponderance of the evidence." *Steve Owens Constr., Inc. v. Bordelon*, 243 So. 3d 601, 605 (La. App. 1 Cir. 2018).

Plaintiff asserts that he and defendant orally agreed to enter into a partnership or joint venture to develop real estate in New Orleans, and that pursuant to that agreement, he is entitled to half of the proceeds defendant receives in connection with 1532 Tulane Partners' work on Charity Hospital. Under Louisiana law, a "partnership" is a "juridical person, distinct from its partners, created by a contract between two or more persons to combine their efforts and resources in determined proportions and to collaborate at mutual risk for their common profit or commercial benefit."   La. Civ. Code art. 2801.   "The essential elements of a joint venture are the same as those of a partnership, *e.g.*, two or more parties combining their property, labor, skill, etc., in the conduct of the venture for joint profit or benefits, with each having some right of control."   *First Bank & Tr. v. Treme*, 129 So. 3d 605, 612 (La.

10

App. 5 Cir. 2013).  For a partnership to arise, "both parties [must] intend to have a business relationship between them," and the resulting relationship must exhibit "all the major characteristics of a partnership." *Sacco v. Paxton*, 133 So. 3d 213, 217 (La. App. 3 Cir. 2004).  Partnership agreements may be entered into orally, but if the agreement exceeds $500 in value, it "must be proved by at least one credible witness and other corroborating circumstances."  La. Civ. Code art. 1846.  Because plaintiff asserts that the value of the parties' oral contract exceeds $500—indeed, plaintiff contends that he is entitled to millions of dollars in past and future profits[38]—he must meet the requirements of Louisiana Civil Code article 1846.  *See, e.g.*, *First Bank & Tr.*, 129 So. 3d at 612 (requiring plaintiff to meet the requirements of article 1846 in order to establish the existence of an oral agreement to enter into a joint venture).

In order to satisfy the requirements of article 1846, "[a] party may serve as his own witness." *Commercial Flooring & Mini Blinds, Inc. v. Edenfield*, 138 So. 3d 30, 36 (La. App. 1 Cir. 2014).   "[T]he other circumstances which corroborate the claim must come from a source other than the plaintiff." *First Bank & Tr.*, 129 So. 3d at 612 (citing *Regel L. Bisso, L.L.C. v. Stortz*, 77 So. 3d 1033, 1035-36 (La. App. 5 Cir. 2011)).   "Only

---

[38]     R. Doc. 45 at 27-28.

general corroboration is required." *La. Weld & Press, L.L.C. v. Loupe Const.*, 31 So. 3d 467, 472 (La. App. 5 Cir. 2010).   A plaintiff need not "offer independent proof of every detail." *Id.*

Here, plaintiff offers his own testimony in support of his claim. Specifically, he testified in his deposition that he and defendant orally agreed to "do [a] joint venture 50/50," in which plaintiff would "bring the deals in New Orleans," defendant would "bring the money," and plaintiff would "do all of the rest."[39]  Although plaintiff may serve as his own witness to fulfill article 1846's requirement that "at least one credible witness" testify to the existence of the oral contract, the agreement plaintiff described in his deposition does not apply to 1532 Tulane Partners' redevelopment of Charity Hospital.   Unlike the Gravier Street project, in which defendant provided $600,000 to purchase the property, defendant did not "bring the money" for the multimillion-dollar redevelopment of Charity Hospital.   Rather, the project was financed by a third party.[40]  Specifically, Clearnote Capital was expected to provide third-party funding in connection with the CHR Partners proposed project,[41] and 1532 Tulane Partners ultimately received funding for

---

[39]    R. Doc. 33-2 (Moshe Shargian Dep. Pt. I) at 49:6-15.
[40]    *Id.* at 174:8-10; R. Doc. 45-1 at 10.
[41]    R. Doc. 45-1 at 10.

the redevelopment from a number of different third-party financers.[42] Further, whereas plaintiff did most of the work for the Gravier Street project, he did not "do all of the rest" for Charity Hospital. Instead, he was part of a larger team that worked on the CHR Partners Bid,[43] and by the time 1532 Tulane Partners was formed to respond to the State of Louisiana's second request for proposals in 2018, plaintiff and defendant were no longer in communication. Plaintiff had no involvement with 1532 Tulane Partners' preparation of the 1532 Tulane Partners Bid, or with their subsequent development work after their bid was chosen.

Even if plaintiff's deposition testimony qualified as "credible witness testimony" of an agreement to share equally in the proceeds defendant receives from 1532 Tulane Partners' redevelopment of Charity Hospital, plaintiff has failed to identify "other circumstances which corroborate the claim" that "come from a source other than" himself. La. Civ. Code art. 1846. Plaintiff relies on three types of corroborating evidence: representations by defendant that plaintiff was defendant's "partner," the parties' course of conduct, and deposition testimony from several third parties. None of this evidence corroborates plaintiff's claim that defendant agreed to pay him 50%

---

[42] *Id.* at 13; R. Doc. 33-5 (Joseph Stebbins Dep.) at 50:1-11, 52:1-4.

[43] R. Doc. 33-3 (Moshe Shargian Dep. Pt. II) at 46:9-21 (describing the others involved in planning the CHR Partners Bid).

of the proceeds he receives from 1532 Tulane Partners' work redeveloping Charity Hospital.

First, plaintiff highlights two emails in which defendant referred to plaintiff as his "partner." One of the emails was written in connection with a separate real estate project that never came to fruition.[44] In the other email, which appears to relate to the CHR Partners Bid, defendant refers to plaintiff as his "partner in New Orleans" who would coordinate the logistics of a meeting.[45] Although this email supports plaintiff's assertion that the parties worked together on the CHR Partners Bid in 2015, years before 1532 Tulane Partners was created, it falls short of corroborating plaintiff's claim that defendant agreed to pay plaintiff 50% of the proceeds generated as a result of the CHR Partners Bid *or* the 1532 Tulane Partners Bid—indeed, the email says nothing of plaintiff's compensation.[46]

Plaintiff also contends that defendant has never denied the existence of the alleged oral agreement in sworn testimony.[47] But defendant denied the existence of the any agreement to pay plaintiff in connection with the Charity Hospital project in his responses to defendant's requests for

---

[44]    R. Doc. 45 at 9.

[45]    R. Doc. 45-4 at 16.

[46]    *Id.*

[47]    R. Doc. 45 at 2.

14

admission.[48]  Further, defendant has consistently denied the existence of the agreement throughout the course of this litigation.[49]   The absence of deposition testimony denying the existence of the agreement is not tantamount to a concession that the agreement existed, particularly since plaintiff did not depose defendant in this matter.[50]

Plaintiff's evidence regarding the parties' course of conduct does not corroborate plaintiff's claim that the parties agreed to evenly split the proceeds defendant generated from 1532 Tulane Partners' redevelopment work, either.  In particular, plaintiff highlights the parties' history of working together on earlier real estate development projects.[51]  But it is undisputed that defendant did not pay plaintiff 50% of the proceeds of any of those projects.  Indeed, only one of the real estate projects that plaintiff describes—the Gravier Street project—ever generated a profit, and defendant did not pay plaintiff 50% of the proceeds derived from that project.  To the contrary, defendant paid plaintiff only $150,000, which defendant characterized as plaintiff's "commission" and "fee." [52]   *Cf. Steve Owens Constr., Inc. v. Bordelon*, 243 So. 3d 601, 603-04 (La. App. 1 Cir. 2018) (finding that the

---

[48]    R. Doc. 33-7 at 12-13.
[49]    *See, e.g.*, R. Doc. 10 ¶ XVI, R. Doc. 33; R. Doc. 54.
[50]    R. Doc. 54 at 4.
[51]    R. Doc. 45 at 16-19.
[52]    R. Doc. 45-3 at 7-8.

existence of an oral contract to pay plaintiff for time and materials was corroborated by the defendant's history of consistently paying plaintiff's weekly invoices for time and materials "on a regular basis without incident for ten months").

Plaintiff also highlights the work he did in connection with preparing the CHR Partners Bid. But the undisputed evidence that plaintiff worked on the CHR Partners Bid[53] does not evidence any particular agreement as to plaintiff's compensation for his work on that project, much less an agreement that plaintiff would receive compensation for the work of 1532 Tulane Partners, an entity with which he had no relationship. Louisiana courts have consistently held that evidence that a plaintiff performed work is insufficient to establish an oral contract for any particular compensation arrangement. For example, in *Barges Unlimited Inc. v. Morgan City Stevedores, L.L.C.*, the plaintiff argued that the defendant orally agreed pay him a 50% commission. No. 2022-0691, 2023 WL 1463263, at *14 (La. App. 1 Cir. 2023). The defendant denied any agreement to pay plaintiff a commission, much less "half of what [they] made." *Id.* at *15. In support of his claim, the plaintiff highlighted the work he performed on defendant's behalf. *Id.* at *16. The court found this evidence insufficient to establish the existence of an oral

---

[53]    *See, e.g.*, R. Doc. 33-9 (Michael Millman Dep.) at 10:7-12:2.

contract under article 1846.  In particular, the court observed that the plaintiff's "referral of business and work done on [the defendant's] behalf is not corroborating evidence to pay [the plaintiff] a commission for his work, as proof of corroborating circumstances may not be the result of the plaintiff's own actions." *Id.* at *17.

Similarly, in *Woodard v. Felts*, the plaintiff, a professional forester, alleged that the defendant, a landowner, entered into an oral agreement for plaintiff to market defendant's timber.  573 So. 2d 1312, 1314 (La. App. 2 Cir. 1991).  Pursuant to the alleged agreement, plaintiff marked various trees on defendant's property that plaintiff believed could be sold.  *Id.*  The defendant denied hiring the plaintiff to market his timber; rather, he argued that he merely wanted the plaintiff to provide an estimate of the quantity of marketable timer on his property.  *Id.* at 1316.  In support of the alleged oral agreement, the plaintiff highlighted evidence that he did, in fact, mark trees on the defendant's property.  *Id.* at 1315.  The court found that the plaintiff's work marking trees on the defendant's property was insufficient to establish the existence of an oral contract to hire the plaintiff to market the timber, as "proof of corroborating circumstances may not be the result of the plaintiff's own actions." *Id.*

The same is true here—plaintiff's evidence of work he performed for the CHR Partners Bid is not corroborating evidence of an agreement to be compensated in any particular fashion for his work on that bid, much less for 1532 Tulane Partners' redevelopment of Charity Hospital. The Court thus finds that plaintiff's course-of-conduct evidence does not create a fact issue as to the existence of an oral contract.

Finally, plaintiff offers, as "independent witness corroboration" of the agreement, the testimony of Jacob Shargian, his father; Ilanit Shargian, his wife; Ian Cockburn, a real estate broker; Katherine Harmon, an architect who worked with the parties on the Gravier Street project; and Michael Millman, who worked with plaintiff on the CHR Partners Bid. None of the testimony on which plaintiff relies creates a fact issue as to the existence of an agreement between the parties to evenly split the proceeds defendant receives in connection with 1532 Tulane Partners' work.

First, plaintiff asserts that his father, Jacob Shargian, testified that defendant said he intended to split the profits earned on the Gravier Street project with plaintiff.[54]  Plaintiff does not actually include as an exhibit the

---

[54]     R. Doc. 45 at 10.

testimony that he refers to in his opposition brief.[55]   Even if plaintiff had included this testimony, it would not constitute independent corroboration of the existence of an agreement that defendant would share the proceeds generated by 1532 Tulane Partners' work on the Charity Hospital project, which occurred years later and was considerably different in size and scope than the Gravier Street project.

Ian Cockburn, a real estate broker, likewise testified that he thought the parties had an oral agreement to split the proceeds of the Gravier Street project evenly.[56]   He further testified that the parties orally agreed that plaintiff would do all the work for that project.[57]   Like Jacob Shargian, Ian Cockburn does not testify about any agreement as to plaintiff's compensation for his work on the CHR Partners Bid, much less an agreement that plaintiff would be compensated for proceeds generated by 1532 Tulane Partners' redevelopment work.

Katherine Harmon, an architect who worked with the parties on the Gravier Street project, testified via affidavit that the parties were "50/50 partners" on their real estate development projects in New Orleans,

---

[55]    In his opposition brief, plaintiff cites to Exhibit P-7. *See id.*  But Exhibit P-7 is just a cover sheet for Jacob Shargian's deposition transcript; plaintiff did not actually include the cited testimony itself.

[56]    R. Doc. 45-12 (Ian Cockburn Dep.) at 47:6-19.

[57]    *Id.*

including the Gravier Street project.[58]  In her deposition, she explained that she understood this was the parties' profit-sharing arrangement for the projects that defendant would finance, and that plaintiff would do all of the work on.[59]  Specifically, she testified that she had "the understanding that [defendant] was the money guy, and [plaintiff] was the partner on the ground in New Orleans."[60]  As discussed earlier, however, defendant did not provide the financing to redevelop Charity Hospital, nor did plaintiff do all the work. Rather, because of the size of the project, it was financed by a third party. Further, plaintiff was a member of a large team involved in the work of CHR Partners and had no involvement in the work of 1532 Tulane Partners.[61] Harmon also stated in her affidavit that she "was informed" that plaintiff was "a 50/50 partner with [defendant] as to his percentage ownership" in the Charity Hospital project.[62]  But in her deposition, she clarified that she assumed the parties intended to evenly split the profits defendant generated in connection with his work on Charity Hospital because that's what she believed their arrangement was for the Gravier Street project.[63]  Accordingly,

---

[58]    R. Doc. 46-1 ¶¶ 6, 8.

[59]    R. Doc. 71-4 (Katherine Harmon Dep.) at 8:21-9:14.

[60]    *Id.* at 10:10-16.

[61]    *See* R. Doc. 45-1 at 10; R. Doc. 33-3 (Moshe Shargian Dep. Pt. II) at 46:9-21.

[62]    R. Doc. 46-1 ¶ 9.

[63]    R. Doc. 71-4 (Katherine Harmon Dep.) at 18:22-19:10.

Harmon's testimony does not corroborate the existence of an agreement for plaintiff to be paid 50% of the profit defendant realizes from 1532 Tulane Partners' redevelopment work.

Next, plaintiff relies on his wife Ilanit Shargian's testimony that the parties were "partners," and that they were "50/50."[64]  There are several issues with this testimony.  First, Ilanit Shargian testified that she learned about the partnership directly from plaintiff.  This "corroboration" thus does not "come from a source other than" plaintiff, as article 1846 requires.  La. Civ. Code art. 1846; *see also First Bank & Tr. v. Treme*, 129 So. 3d 605, 611 (La. App. 5 Cir. 2013) (affirming summary judgment on plaintiff's claim for breach of oral contract where only evidence of alleged contract was plaintiff's own testimony and the testimony of a third party who learned about the alleged agreement through the plaintiff).  Second, she did not testify that plaintiff told her the agreement was to split profits from the parties' real estate development work evenly; rather, she testified that "50/50" was her understanding of the term "partners."[65]  To complicate matters further, she testified that the parties agreed that defendant would pay plaintiff $5,000 per month in addition to half of the proceeds from their projects.[66]  This

---

[64]   R. Doc. 45-8 (Ilanit Shargian Dep.) at 34:24-35:7.
[65]   *Id.*
[66]   *Id.* at 32:4-34:3.

testimony, taken as true, suggests that the parties are not equal partners, but instead that plaintiff is entitled to more compensation than defendant, which is not a position that plaintiff has advanced in this litigation.

Finally, plaintiff relies on the testimony of Michael Millman, who worked on the CHR Partners Bid.  Millman testified that the parties were "partners," and that he "honestly [doesn't] know" the parties' agreement as to compensation, but that he expected that they would be "equal partners."[67] He testified that he learned about the partnership through plaintiff.[68]  His testimony thus fails to meet the requirements of article 1846 for the same reason as Ilanit Shargian's testimony:  It does not "come from a source other than" plaintiff.  La. Civ. Code art. 1846.  Further, like the other witnesses, Millman's testimony about the parties' alleged "partnership" falls short of corroborating any agreement as to whether plaintiff would be compensated for the work of 1532 Tulane Partners, in which plaintiff was not involved.

In sum, plaintiff has identified no corroborating evidence that creates a fact issue as to the existence of an agreement to be paid 50% of the proceeds defendant earned from 1532 Tulane Partners' redevelopment of Charity Hospital.  Although plaintiff has identified testimony indicating that he

---

[67]   R. Doc. 33-9 (Millman Dep.) at 13:17-25.
[68]   *Id.* at 31:12-16.

performed work on the CHR Partners Bid, and that some third parties believed that plaintiff and defendant were partners in their real estate development projects, he identifies no evidence suggesting that defendant ever committed to evenly splitting the proceeds defendant generated from 1532 Tulane Partners' redevelopment work.  Indeed, plaintiff's evidence and arguments are contradictory as to what amount of payment, if any, plaintiff is entitled to—plaintiff testified that he is entitled to 50% of the proceeds of all of the parties' real estate projects, an agreement that he argues extends to 1532 Tulane Partners' work,[69] and his wife testified that plaintiff is entitled to 50% of the proceeds *plus* $5,000 per month.[70]  And in his complaint and opposition brief, plaintiff does not argue that he is entitled to half of the project proceeds.  Rather, he contends that he is entitled to half of only defendant's share of the proceeds in 1532 Tulane Partners' redevelopment work,[71] as Stebbins, the lead developer on the Charity Hospital project,[72] is also entitled to a portion of the proceeds.  Although plaintiff need not corroborate "every detail" of the alleged oral agreement under article 1846, he has identified no "corroborating circumstances" for the key term of the

---

[69]    R. Doc. 33-2 (Moshe Shargian Dep. Pt. I) at 49:6-15.

[70]    R. Doc. 45-8 (Ilanit Shargian Dep.) at 33:24-34:3.

[71]    R. Doc. 1-7 ¶ 16; R. Doc. 45 at 27-28.

[72]    R. Doc. 33-7 at 15-16.

alleged agreement: the amount of compensation.   *See La. Weld & Press, L.L.C. v. Loupe Const.*, 31 So. 3d at 472.

Plaintiff's purported corroborating evidence is thus insufficient.   For example, in *First Bank and Trust v. Treme*, the plaintiff argued that he and a bank orally entered into a joint venture agreement to build a new branch for the bank.   129 So. 3d 605 (La. App. 5 Cir. 2013).   The bank denied the existence of the joint venture.   The plaintiff relied on his own testimony and the testimony of an employee of the bank in support of his claim.   *Id.* at 611. The Fifth Circuit Court of Appeal of Louisiana affirmed the lower court's grant of summary judgment as to plaintiff's joint venture claim because the plaintiff's corroborating evidence was insufficient.   *Id.* at 612.   In particular, the court noted that the bank employee did not have personal knowledge of the agreement; rather, he learned about the alleged agreement through the plaintiff.   *Id.*   Further, the corroborating evidence was "void of any information of how [the parties] would conduct the venture for joint profit or the level of control for each party."   *Id.*   The witnesses on whom plaintiff relies similarly lack personal knowledge of the alleged agreement to evenly share the proceeds generated by 1532 Tulane Partners' redevelopment work on Charity Hospital.

Further, despite plaintiff's repeated assertion that the parties were "partners" on the project, plaintiff acknowledges that by the time 1532 Tulane Partners was formed to respond to the State of Louisiana's second request for proposals, defendant "wanted to get rid of [plaintiff] as his partner" and refused to work with him.[73]  By plaintiff's own account, there was no intent on defendant's part to "have a business relationship" with plaintiff in connection with 1532 Tulane Partners' redevelopment work, which is required to establish the existence of a partnership agreement. *Sacco*, 133 So. 3d at 217.  Accordingly, the Court grants defendant's motion for summary judgment as to plaintiff's claim for breach of contract.

B.     *Detrimental Reliance*

Under Louisiana law, the theory of detrimental reliance is codified at Louisiana Civil Code art. 1967, which provides, in relevant part:

> A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying.  Recovery may be limited to the expenses incurred or the damages suffered as a result of the promisee's reliance on the promise.

---

[73]     R. Doc. 45-1.

La. Civ. Code art. 1967.  The doctrine of detrimental reliance "is designed to prevent injustice by barring a party from taking a position contrary to his prior acts, admissions, representations, or silence." *Suire*, 907 So. 2d at 59 (quoting *Babkow v. Morris Bart, P.L.C.*, 726 So. 2d 423, 427 (La. App. 4 Cir. 1998)).

To establish a claim for detrimental reliance under Louisiana law, plaintiff must establish three elements by a preponderance of the evidence: "(1) a representation by conduct or word; (2) justifiable reliance; and (3) a change in position to one's detriment because of the reliance." *Luther v. IOM Co., L.L.C.*, 130 So. 3d 817, 825 (La. 2013).  Detrimental reliance "is the idea that a person should not harm another person by making promises that he will not keep." *Suire*, 907 So. 2d at 59 (quoting *Morris v. People's Bank & Tr. Co.*, 580 So. 2d 1029 (La. App. 3 Cir. 1991)).  Notably, "[d]etrimental reliance claims must be examined carefully and strictly" because such claims "are not favored in Louisiana." *In re Ark-La-Tex Timber Co.*, 482 F.3d 319, 334 (5th Cir. 2007).  The Fifth Circuit has thus observed that "[i]t is difficult to recover under a theory of detrimental reliance." *Id.*

In his opposition brief, plaintiff does not address the elements of a detrimental reliance claim.  Rather, he simply argues that once the Court concludes that there was an agreement between the parties, plaintiff "is

entitled to provide evidence of his reliance on it."[74]  But plaintiff has failed to identify evidence creating an issue of fact as to whether defendant made "a representation by word or conduct" that he would share the profits he earned from working on redeveloping Charity Hospital evenly with plaintiff.  *See Luther*, 130 So. 3d at 825.  As discussed in Section III.A, *supra*, plaintiff testified that defendant agreed to share evenly in the proceeds of real estate development projects in which plaintiff would "bring the deals in New Orleans," defendant would "bring the money," and plaintiff would "do all of the rest."[75]  Defendant denies the existence of this agreement, but even if plaintiff's characterization of the agreement were correct, the Charity Hospital project does not fit this description, as defendant did not "bring the money."[76]  Further, plaintiff did not "do all of the rest" of the work on the CHR Partners Bid, and he had no involvement with 1532 Tulane Partners' work on Charity Hospital.[77]

Nor has plaintiff created an issue of fact as to whether defendant represented through his conduct that he would pay defendant half of the proceeds defendant generated through 1532 Tulane Partners' work

---

[74]   R. Doc. 45 at 21.

[75]   R. Doc. 33-2 (Moshe Shargian Dep. Pt. I) at 49:6-15.

[76]   *Id.* at 174:8-10; R. Doc. 45-1 at 10.

[77]   *See* R. Doc. 45-1 at 10; R. Doc. 33-3 (Moshe Shargian Dep. Pt. II) at 46:9-21.

redeveloping Charity Hospital.  In his opposition brief, plaintiff focuses on the parties' history of working together on other projects,[78] but at the time that plaintiff allegedly relied to his detriment, defendant had never paid plaintiff for any work he performed in connection with the parties' real estate development projects.  Indeed, the only time that defendant paid plaintiff was in connection with the Gravier Street project in 2017, *after* plaintiff's work on the CHR Partners Bid concluded.[79]  And even then, plaintiff was not paid half of the project proceeds.[80]  Plaintiff has thus failed to meet his burden of creating a fact issue as to whether defendant promised, by word or conduct, that he would pay plaintiff half of the proceeds he received from 1532 Tulane Partners' work redeveloping Charity Hospital.  Because "under article 1967 the existence of a promise is a necessary element of a detrimental reliance claim," *Koerner v. CMR Constr. & Roofing, L.L.C.*, 910 F.3d 221, 232 (5th Cir. 2018), plaintiff's claim is subject to dismissal on this basis alone.

Even if plaintiff had created a fact issue as to the existence of a promise, dismissal of plaintiff's claim is independently warranted because plaintiff has failed to identify evidence that creates a fact issue as to whether his reliance was justifiable.  "In determining justifiable reliance, courts generally look to

---

[78]   R. Doc. 45 at 16-19.
[79]   R. Doc. 33-3 (Moshe Shargian Dep. Pt. II) at 127:5-129:15.
[80]   R. Doc. 45-3 at 7-8.

the reasonableness of that reliance" based on an examination of the "factual circumstances." *In re Ark-La-Tex Timber Co.*, 482 F.3d at 334. The factual circumstances here indicate that plaintiff's reliance was not reasonable. By the time that plaintiff assisted with the CHR Partners Bid, he had worked on multiple other projects that did not come to fruition and for which he was not paid. Ultimately, the CHR Partners Bid was not chosen,[81] and no one on the team was paid for working on it.[82] By the time defendant and Stebbins renewed their efforts at redeveloping Charity Hospital under a long-term lease agreement in 2018, plaintiff was no longer in contact with defendant, nor was he involved in 1532 Tulane Partners' work.

Courts also look to the "commercial sophistication of the party asserting the claim" to determine whether a party's reliance was reasonable. *Id.* at 334; *see also Academy Mortg. Co., LLP v. Barker, Boudreaux, Lamy & Foley*, 673 So. 2d 1209, 1212 (La. App. 4 Cir. 1996) ("[A] promisee's business acumen is properly considered when determining reasonableness of the claimed reliance."). In his statement of material facts, plaintiff contends that he is "an accomplished renovator and developer of residential buildings in New Orleans with fifteen buildings to his credit."[83] Plaintiff's

---

[81] R. Doc. 45-1 at 10.
[82] R. Doc. 33-8 (Adam Vodanovich Dep.) at 96:17-21, 98:7-11.
[83] R. Doc. 45-1 at 3.

experience in the industry further undermines his contention that his expectation that he would be paid for his work on a bid that was not chosen is reasonable.

In sum, the Court finds that plaintiff has failed to identify evidence creating a fact issue as to whether defendant represented "by word or conduct" that he would share with plaintiff the proceeds generated by 1532 Tulane Partners' redevelopment work. Nor has plaintiff met his burden of identifying facts that indicate that his purported reliance was reasonable, in light of his experience in the real estate development industry and his lack of involvement in the work of 1532 Tulane Partners. The Court thus grants defendant's motion for summary judgment as to plaintiff's detrimental reliance claim.

### C. *Unjust Enrichment*

Louisiana Civil Code article 2298 provides, in pertinent part, that "[a] person who has been enriched without cause at the expense of another person is bound to compensate that person." La. Civ. Code art. 2298. "The root principle of an unjustified enrichment is that the plaintiff suffers an economic detriment for which he should not be responsible, while the defendant receives an economic benefit for which he has not paid." *Nature*

*Conservancy v. Upland Props., L.L.C.*, 48 So. 3d 1257, 1261 (La. App. 1 Cir. 2010).  In order to recover for unjust enrichment, a plaintiff must establish the following: "(1) the defendant was enriched; (2) the plaintiff was impoverished; (3) a causal relationship exists between the defendant's enrichment and the plaintiff's impoverishment; (4) there is no justification or legal cause for the enrichment and impoverishment; and (5) the plaintiff has no other remedy at law available." *Ferrara Fire Apparatus, Inc. v. JLG Indus., Inc.*, 581 F. App'x 440, 444 (5th Cir. 2014) (citing *Carriere v. Bank of La.*, 702 So. 2d 648, 671 (La. 1996)).

Defendant moves for summary judgment on the grounds that plaintiff cannot establish the fifth element of unjust enrichment.[84]  Under Louisiana law, the remedy of unjust enrichment is "subsidiary" in nature; it is "not . . . available if the law provides another remedy." *Walters v. MedSouth Record Mgmt., L.L.C.*, 38 So. 3d 243, 244 (La. 2010) (quoting *Mounton v. State*, 525 So. 2d 1136, 1142 (La. App. 1 Cir. 1988)).  Louisiana state courts, and federal courts interpreting Louisiana law, have held that the requirement that plaintiffs have "no other remedy at law available" means that plaintiffs cannot bring a claim for unjust enrichment if they also seek to recover under other causes of action, regardless of whether those other causes of action

---

[84]   R. Doc. 33-1 at 20-21; R. Doc. 54 at 9.

actually succeed.  *See, e.g.*, *Walters*, 38 So.3d at 242-43 (affirming dismissal of unjust enrichment claim because plaintiff also alleged negligence, even though negligence claim was untimely); *JP Mack Indus. L.L.C. v. Mosaic Fertilizer, L.L.C.*, 970 F. Supp. 2d 516, 522 (E.D. La. 2013) (dismissing unjust enrichment claim when plaintiff also sought relief under the Louisiana Private Works Act).  In March 2022, this Court applied this rule of law to conclude that plaintiff was precluded from bringing an unjust enrichment claim against several non-diverse third parties because he also sought to recover under other causes of action.[85]  Defendant invokes the Court's March 2022 ruling in his motion for summary judgment:  He argues that because plaintiff asserts claims for breach of contract and detrimental reliance, albeit unsuccessfully, plaintiff is precluded from also bringing a claim for unjust enrichment.[86]

In January 2023, the Supreme Court of Louisiana clarified that the "no other remedy at law" element does not mean that a plaintiff is categorically precluded from recovering for unjust enrichment simply because the plaintiff brought other, ultimately unsuccessful, claims.  In *Hidden Grove, L.L.C. v. Brauns*, the plaintiff brought claims for unjust enrichment, breach

---

[85]   R. Doc. 18 at 17.
[86]   R. Doc. 33-1 at 1-2.

of contract, and trespass. 356 So. 3d 974 (La. 2023). The trial court found that the plaintiff was not entitled to recovery for trespass or breach of contract, but it awarded the plaintiff damages for unjust enrichment. *Id.* at 977. On appeal, the Louisiana Court of Appeal for the Third Circuit held that plaintiff was precluded from recovering for unjust enrichment because it had not established the fifth element of an unjust enrichment claim: that there was no other remedy available at law. *Id.*

The Louisiana Supreme Court reversed. *Id.* at 980. Because unjust enrichment is "subsidiary" in nature, the court began its analysis by "determin[ing] whether a claim existed in contract or tort," as alleged in the plaintiff's complaint. *Id.* The court concluded that "based on the specific facts presented," the plaintiff was not entitled to recovery under these theories.[87] *Id.* The court nevertheless held that the plaintiff had "successfully proved the 'no other remedy at law' element" and remanded the case. *Id.*

Here, as in *Hidden Grove*, plaintiff brought other claims, but based on the facts presented, plaintiff is not entitled to recovery for those claims. Because plaintiff cannot prove the existence of an enforceable oral contract

---

[87]    Specifically, the court held that the facts of the case did not meet the elements of a trespass claim, and noted that plaintiff had abandoned its breach of contract claim on appeal. *Id.*

or that he relied to his detriment on a promise made by defendant, neither claim provides plaintiff with a "remedy at law." *Id.*  Defendant has not identified any other remedy at law that was available to plaintiff but that plaintiff did not pursue. *Cf. Jim Walters Homes v. Jessen*, 732 So. 2d 699, 706 (La. App. 3 Cir. 1999) (holding that unjust-enrichment plaintiff had another remedy available at law when it could have foreclosed on the property securing its debt but chose not to); *Ferrara Fire Apparatus, Inc.*, 581 F. App'x at 444 (holding that unjust-enrichment plaintiff had another remedy available at law when it could have sued to enforce the valid contract between the parties but chose not to).  The Court thus finds that defendant is not entitled to summary judgment on this basis.

## IV.   CONCLUSION

For the foregoing reasons, the Court hereby GRANTS IN PART and DENIES IN PART defendant's motion for summary judgment.

New Orleans, Louisiana, this   19th   day of July, 2023.

_____

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

34